UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: METHOD OR PROCESSING ETHANOL )<br>BYPRODUCTS AND RELATED SUBSYSTEMS )<br>('858) PATENT LITIGATION, )<br>)<br>)<br>THIS ENTRY RELATES TO: )<br>1:10-cv-0180-LJM-DML )<br>1:10-cv-8000-LJM-DML )<br>1:10-cv-8001-LJM-DML )<br>1-10-cv-8002-LJM-DML )<br>1-10-cv-8003-LJM-DML )<br>1-10-cv-8004-LJM-DML )<br>1-10-cv-8005-LJM-DML )<br>1-10-cv-8006-LJM-DML )<br>1-10-cv-8007-LJM-DML )<br>1-10-cv-8008-LJM-DML )<br>1-10-cv-8009-LJM-DML )<br>1-10-cv-8010-LJM-DML )<br>1:10-cv-8011-LJM-DML ) | CASE NO: 1:10-ml-2181-LJM-DML |

## Entry on Plaintiff's Motion for Protective Order
## and Regarding David F. Cantrell's Deposition

On September 28, 2011, the parties appeared before the magistrate judge for a telephone discovery conference regarding issues that arose during the deposition of David F. Cantrell, one of the inventors of the '858 patent that is the subject of this multidistrict proceeding. The court heard oral argument and permitted the parties to brief the matters further. Plaintiff GS CleanTech Corporation ("CleanTech") then filed a motion for a protective order regarding Mr. Cantrell's deposition. (Dkt. 181).[1] The defendants also seek certain relief regarding the conduct

---

[1] The court notes that the docket contains duplicate filings by CleanTech. Docket numbers 182 and 184 are duplicates of CleanTech's memorandum in support of its motion for protective order. Docket numbers 183 and 186 are duplicates of CleanTech's motion for leave to file under seal its motion for protective order, supporting memorandum, and the declaration of Michael J. Rye with exhibits (which is at Dkt. 185). The court will address the motion to seal by separate entry.

of Mr. Cantrell's deposition. (*See* Dkt. 193 for brief filed by all defendants except Adkins Energy LLC, and Dkt. 191 for brief filed by Adkins Energy).

**Background**

Mr. Cantrell has been represented in connection with his deposition by the same counsel who represents plaintiff CleanTech, primarily attorney Michael Rye. Mr. Cantrell is in poor health. After various delays in scheduling because of health concerns, his deposition was scheduled for September 21 and 22, 2011, at Mr. Rye's offices in Connecticut. The parties agreed to take his deposition under certain guidelines to monitor his health, particularly the monitoring of his blood pressure on a periodic basis.[2] As the first day of the deposition wore on, Mr. Cantrell's blood pressure levels began rising and he took medication to attempt to control it. During the remaining hour or so of the deposition on day one, the defendants marked two documents as deposition exhibits 105 and 106, purporting to be emails, dated August 1, 2003, and August 18, 2003, respectively, from Mr. Cantrell to Jay Sommers of Agri-Energy LLC and others. Mr. Cantrell's counsel (also CleanTech's counsel) instructed him not to answer any questions regarding the documents based on counsel's view that the documents should have been produced by the defendants before the deposition because, among other reasons, they were responsive to CleanTech document requests.

The defendants claimed that they were not required to produce the documents earlier because they were protected work product. The defendants based this assertion on the fact that the documents had been gathered from non-parties by some of the defendants' counsel as part of

---

[2] The plaintiffs maintain that the parties agreed that Mr. Cantrell could be deposed for 10 hours total over the two days, with the ability to return for at least two more hours at a later date. (*See* Dkt. 184, at p. 5). The defendants state that although they agreed to go forward and conduct 10 hours of deposition over September 21 and 22, they did not agree to a time limit for additional deposition testimony for Mr. Cantrell (dkt. 193 at p. 4 n.5), and the parties may need the court's assistance in resolving disputes over lengths of depositions.

their factual investigation in the course of the litigation. The defendants also insisted that Mr. Cantrell was not permitted to discuss the documents with his counsel before testifying about them because they are entitled to Mr. Cantrell's "raw" recollection and testimony about them and, under Local Rule 30.1(b), an attorney for a deponent may not privately confer with the deponent "regarding a pending question except for the purpose of determining whether a claim of privilege should be asserted."

Mr. Cantrell's counsel then suspended the deposition for the day because of Mr. Cantrell's health, and the defendants marked six more documents as deposition exhibits (exhibits 109-114) and asserted that Mr. Cantrell also could not discuss these documents with his counsel because they were the subject of pending questions. Mr. Cantrell's counsel insisted that Mr. Cantrell should not be prohibited from discussing the documents with counsel before answering questions about them because the defendants were "sand bagging," and the documents were ones that should have been produced in discovery. The parties agreed to proceed with the deposition the following morning and to attempt to reach this magistrate judge for a ruling before the deposition resumed.

Sometime during the evening of September 21, Mr. Cantrell became more concerned about his health. On the morning of September 22, Mr. Cantrell's counsel—after hearing from Mr. Cantrell—told defense counsel that Mr. Cantrell could not proceed with his deposition and suspended it to be reconvened at a later date when Mr. Cantrell's health permits it. Mr. Cantrell spoke with his doctor and then returned home to Atlanta, Georgia that afternoon. He was admitted to the hospital on Monday, September 26.

CleanTech requests that the court sanction the defendants for failure to produce the documents before Mr. Cantrell's deposition and for the defendants' alleged bad faith conduct of

3

the deposition. Both CleanTech and the defendants ask the court to set guidelines for the continuation of Mr. Cantrell's deposition.

## Analysis

**A. The parties agree that the documents are important, and may be central, to this case.**

One of the subject deposition exhibits, exhibit 105, may be—according to the defendants—a proverbial smoking gun. The '858 patent claims priority to a provisional patent application filed with the United States Patent and Trademark Office ("USPTO") on August 17, 2004. Under the patent laws, generally, if a patent application is filed more than one year after an offer of sale of the invention, then the invention is deemed to have entered the public domain and is not entitled to patent protection. *See* 35 U.S.C. § 102(b). In November 2010 and in connection with Mr. Cantrell's application for the '858 patent, he disclosed to the USPTO a letter dated July 31, 2003, from him to Agri-Energy, and stated by sworn declaration that the letter was first given to Agri-Energy on August 18, 2003, when he hand delivered it to representatives of Agri-Energy at a face-to-face meeting at Agri-Energy's facility in Minnesota. (*See* Dkt. 193-2).

In contrast, deposition exhibit 105 is an email from Mr. Cantrell to a representative of Agri-Energy dated August 1, 2003, asking him to "review the attached proposal," to which apparently was attached the July 31, 2003 letter that Mr. Cantrell told the USPTO he had not provided to Agri-Energy until August 18, 2003. If the July 31 letter was actually delivered to Agri-Energy on August 1, 2003 (more than one year before the August 17, 2004 patent application), that may invalidate the '858 patent *if* all the elements of 35 U.S.C. § 102(b) are otherwise met. Thus, the August 1 email is, as defendants contend, a "critical" document to this case and a likely centerpiece of the defendants' claims that the '858 patent is invalid.

4

Deposition exhibit 106 is an August 18, 2003 email from Mr. Cantrell to representatives of Agri-Energy, to which was apparently attached an August 19, 2003 letter from Mr. Cantrell to Agri-Energy, coinciding with the August 18 meeting with Agri-Energy discussed by Mr. Cantrell in his declaration to the USPTO. Deposition exhibits 109 through 111 are additional email communications from Mr. Cantrell to representatives of Agri-Energy and others, exhibit 112 is a schematic drawing of an Ethanol System, and exhibit 113 is a visitors' sign-in sheet signed by Mr. Cantrell.

**B.     The documents were the subject of discovery requests.**

The foregoing documents—certainly at least deposition exhibit 105—fall within the scope of discovery requests that CleanTech served on the defendants in January 2011. CleanTech's memorandum in support of its motion for protective order cites to several discovery requests to which the documents, or information about them, were responsive. (*See* Dkt. 184 at pp. 3-4). The defendants—wisely—do not contend otherwise. There is no question that absent a viable objection for withholding the documents, they should have been produced to CleanTech (and all defendants) no later than the Spring of 2011 and would have been available to Mr. Cantrell and his counsel if they had chosen to review them in preparation for his deposition, as they undoubtedly would have.

The documents—again, at least deposition exhibit 105—should also have been disclosed in connection with Preliminary Invalidity Contentions required to have been served by the defendants in January 2011. (*See* Case Management Plan, Dkt. 50, at Section IV.C., p. 3). Finally, the documents also fell within a letter request from CleanTech's counsel dated September 15, 2011, that referred to a press release by defendant ICM, Inc. in which ICM stated that "[t]here is substantial evidence not before the USPTO and not yet presented to the federal

courts that impacts the validity of the [CleanTech] patents." CleanTech's letter stated that if the defendants had any documents that they believed were relevant to validity issues, the defendants should produce them immediately and before Mr. Cantrell's deposition. CleanTech's counsel also warned that Mr. Cantrell would not answer questions at his deposition about any documents first presented to him at the deposition that should have been produced before. Thus, before Mr. Cantrell's deposition, the defendants were well aware of the possibility that Mr. Cantrell would be instructed not to answer questions about the documents.

**C.      The documents are not work product.**

The defendants attempt to excuse their failure to produce the documents in response to document requests and interrogatories, as part of their invalidity contentions, and in response to CleanTech's September 15, 2011 letter on the grounds that the documents are their counsel's work product. Even though the defendants who possessed the documents[3] say they withheld the documents on work product grounds, it appears they never included them in a privilege log or otherwise alerted CleanTech that the defendants were claiming work product protection for documents neither they nor their counsel had prepared and which were not created in anticipation of this, or any other, litigation. Had they included them in a privilege log, CleanTech surely would have challenged the work product assertion as baseless. It is.

As provided by Fed. R. Civ. P. 26(b)(3), the work product doctrine protects from disclosure (1) documents and tangible things (2) prepared in anticipation of litigation or for trial (3) by or for a party or its representative. The party asserting work product protection for any document bears the burden of establishing that the document meets the definitional requirements.

---

[3] Defendant Adkins Energy saw the subject documents for the first time at Mr. Cantrell's deposition. (*See* Dkt. 191 at p. 1.) No other defendant has disclaimed knowledge or possession of the documents before Mr. Cantrell's deposition.

*Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976 (7th Cir. 1996). The documents withheld by the defendants were not prepared in anticipation of litigation or for trial and were not prepared by or for them or by or for one of their representatives.

The defendants acknowledge these shortcomings but claim that because the documents were gathered and specially selected from groups of documents by their lawyers as part of the lawyers' fact-finding investigation in the course of this litigation, the documents take on the characteristics of opinion work product. They rely on *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Relevant Products Liability Litig.,* 2011 WL 2580764 at *1-2 (S.D. Ill. June 29, 2011), which adopted the analysis of the Third Circuit in *Sporck v. Peil,* 759 F.2d 312 (3rd Cir. 1985). In *Sporck,* the court addressed whether a deponent must identify the documents that his counsel selected from among thousands for him to review in preparation for his deposition. The Third Circuit, agreeing with the parties' concession that none of the documents themselves were work product, nevertheless ruled that the work product doctrine protected from disclosure *the identification* of the documents the lawyer assembled for deposition preparation. 759 F.2d at 315-16.

The *Sporck* line of cases—even if this court were willing to accept the rationale[4]—is inapposite here. First, in *Sporck*, all of the documents at issue *had been produced in the litigation.* Production was not the issue; the issue was whether the witness should be required to provide testimony identifying documents when that identification arguably would reveal the attorney's mental impressions. Second, neither CleanTech's discovery requests, nor the defendants' invalidity submissions required by the case management plan, nor CleanTech's September 2011 letter asked the defendants (or required them) to identify and highlight which

---

[4] The logic of *Sporck,* taken too literally, would suggest a court could not require parties to disclose their trial exhibits in advance of trial.

documents their counsel thought were important or had specially assembled. Only the defendants' own volunteered statements that their lawyers had gathered the documents and found them important reveals their counsel's thought processes, opinions, or strategies. The defendants cannot create a protective zone to secret documents this way. Third, the defendants' assertion of work product is undermined by their obvious plan to share the documents at their chosen opportune time during Mr. Cantrell's deposition, as it is by their attempt to construct a basis for it by following a supposed "protocol" of gathering only *some* documents from Agri-Energy— "narrowly tailor[ing] their selection of documents" the lawyers deemed to be relevant to their on-sale bar and inequitable conduct defenses. (*See* Dkt. 193 at p.4).

The defendants likely weighed the benefits of their deposition strategy of surprising Mr. Cantrell (and his counsel and CleanTech) with the documents at his deposition against the risks of withholding clearly responsive documents based on a dubious work product assertion.[5] They decided surprise—and "raw" testimony from Mr. Cantrell—was more important than a possible sanction from the late disclosure of responsive documents.[6] The defendants downplay a motive

---

[5] The defendants' suggestion that, as a non-party, Mr. Cantrell was not entitled to the documents is beside the point. CleanTech is a party and was entitled to the documents. And if the documents had been produced to CleanTech, the court has no doubt they would have been made available to Mr. Cantrell in preparation for his deposition. This court does not accept, however, CleanTech's argument that deponents should be provided with deposition exhibits in advance. This court does not generally require parties to provide to the deponent or otherwise identify deposition exhibits before a deposition, as suggested in the case cited by CleanTech. *See Ethicon Endo-Surgery v. U.S. Surgical Corp.,* 160 F.R.D. 98-99-100 (S.D. Ohio 1995). In the usual case, the lawyer taking a deposition has put a great deal of thought into her selection of potential deposition exhibits, the possibility of removing or augmenting exhibits depending on the answers, and the order in which she intends to present them to the witness. Requiring a lawyer to identify that document assembly to the deponent in advance of a deposition could raise the same type of work product issue recognized by the Third Circuit in *Sporck.*

[6] The court stresses here, again, that defendant Adkins Energy, knew nothing about the documents before Mr. Cantrell's deposition and thus played no role in the decision to withhold them.

8

to make a surprise attack, because Mr. Cantrell might have remembered the withheld documents (having written most of them) or CleanTech might have been aware of them (one of its officers having been identified as a recipient on the "critical" email). And, say the defendants, CleanTech could have asked Agri-Energy to look for documents from Mr. Cantrell just as the defendants did. But the fact that Mr. Cantrell (or CleanTech) could have been aware of the documents or the fact that CleanTech could have itself obtained the documents from Agri-Energy does not erase the defendants' Rule 34 obligations to produce responsive, relevant, non-privileged documents in their possession, custody, or control, nor does it ameliorate their failure to do so.[7]

**D.     Counsel's instruction to Mr. Cantrell to not answer questions was improper.**

Mr. Cantrell's lawyer's instruction to him not to answer questions about documents that CleanTech had not been provided in discovery was improper conduct as well. It was a self-help remedy by CleanTech for the defendants' failure to produce responsive and unprivileged documents, but it is not a remedy the rules allow. Under Fed. R. Civ. P. 30(c)(2), an instruction not to answer may be made "only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Although CleanTech now brings a Rule 30(d)(3) motion on the ground that the defendants were conducting the deposition in bad faith, that is an after-the-fact rationale to justify the instruction. It was not stated as the basis for the instruction. As a non-party deponent, Mr. Cantrell had no right to expect the

---

[7]     The defendants served discovery requests on CleanTech and Mr. Cantrell that would have unearthed the documents if they possessed or controlled them. Because neither produced them, the defendants' revelation of the documents during Mr. Cantrell's deposition allowed the defendants either to truly surprise Mr. Cantrell (and CleanTech) or to test whether they seemed genuinely surprised. The defendants say they have "serious concerns about the integrity of" CleanTech's and Mr. Cantrell's document production (Dkt. 193 at p. 4), but that is not an issue before the court.

defendants to have provided *him* with documents before his deposition and *he* has not moved for a protective order. Even though CleanTech had a right to the documents, CleanTech was not the deponent. Counsel's instruction not to answer cannot be justified under Fed. R. Civ. P. 30(d)(3)(A).

E.  **The Appropriate Relief in these Circumstances**

The parties have argued over the appropriate consequence of the matters discussed in this order. Clean Tech argues that Mr. Cantrell's deposition testimony regarding the documents should be stricken and that the defendants should be sanctioned. The defendants want the court to prohibit Mr. Cantrell from discussing any of the subject documents with his counsel before he continues his deposition testimony on them.

1.  **Striking Mr. Cantrell's existing testimony is not appropriate.**

The court will not strike any of the testimony that Mr. Cantrell already provided. If, in fact, as CleanTech claims, Mr. Cantrell "would have testified differently" had he seen the documents before his deposition, that fact can be explained by Mr. Cantrell on questioning by his counsel when his deposition resumes. It is not particularly unusual for a witness's recollection to be refreshed or modified after consulting a document or taking some time to study it. In those instances, the witness's initial testimony is not generally stricken or somehow erased; rather, it can be explained. Mr. Cantrell can do that here, if appropriate. CleanTech's request that the court strike Mr. Cantrell's September 21, 2011 deposition testimony about Agri-Energy is DENIED.

2.  **Restricting communications between Mr. Cantrell and his counsel is not appropriate.**

The court will not forbid Mr. Cantrell from communicating with his counsel about the subject deposition exhibits before his deposition resumes. If the defendants had complied with

10

their discovery obligations, Mr. Cantrell would have had that opportunity. The court will not permit the defendants' gamesmanship to deny him that opportunity. The court DENIES the defendants' request that Mr. Cantrell be prohibited from conferring with his counsel before answering the questions pending when his deposition was terminated or further questions about the subject documents.

### 3. An award of fees under Rule 37 is a proportionate sanction.

The court finds that an appropriate sanction against the defendants (except for Adkins Energy) for failing to comply with their discovery obligations is to reimburse CleanTech one-half its attorneys' fees and expenses incurred in connection with its motion for protective order. The defendants' conduct in withholding documents from discovery caused CleanTech—justifiably—to seek relief from the court. *See* Fed. R. Civ. P. 37(c) (permitting the court to award fees caused by a party's failure appropriately to supplement or correct discovery responses); Fed. R. Civ. P. 26(c)(3) (providing that the "loser pays" provision of Rule 37(a)(5) applicable to motions to compel applies to motions for protective orders).

Although the court has not granted CleanTech all the relief it sought and has found counsel's instruction not to answer improper, it has vindicated CleanTech's position that the defendants improperly withheld critical documents on baseless grounds. That conduct triggered all the disputes now before the court.

The court awards CleanTech, and against the defendants jointly and severally except for Adkins Energy, one-half its reasonable fees in drafting the motion for protective order, the brief in support, and supporting declaration. CleanTech shall submit a statement of those fees (with supporting documentation) to the defendants within 14 days of this order. The defendants (except for Adkins Energy) shall, within 21 days thereafter, either pay those fees or file with the

11

court an objection to CleanTech's fees that demonstrates why the fees are unreasonable in whole or in part. CleanTech's response and any reply by the defendants shall be filed according to Local Rule 7.1. The court expects the parties to use the defendants' 21-day period to negotiate in good faith over any dispute about the amount of the fees in an effort to avoid the need for the court's intervention.

**F.    The Continuation of Mr. Cantrell's Deposition**

    **1.  Defendants must assure their productions are complete.**

The defendants must produce to CleanTech any other documents responsive to CleanTech's discovery requests and similarly withheld from disclosure because they were "selectively" obtained by their lawyers from third-parties. For these documents, the defendants must also state the earliest date any defendant procured the documents. The defendants' brief regarding these issues says that they have provided this information with respect to documents their counsel obtained from Agri-Energy. The court's order pertains to the defendants' discovery obligations generally, and is thus applicable to other non-party documents.

    **2.  Ground Rules for Mr. Cantrell's Deposition**

Both CleanTech and the defendants ask the court to set "ground rules" for the continuation of Mr. Cantrell's deposition. CleanTech (and Mr. Cantrell) ask the court to protect Mr. Cantrell from "further deposition until his health safely permits." The defendants are eager to complete Mr. Cantrell's deposition as soon as possible, particularly if his health is on the decline. Rightly, the defendants do not want to lose the opportunity to obtain Mr. Cantrell's sworn testimony. Mr. Cantrell's counsel (as noted, the same as CleanTech's counsel) must promptly obtain date(s) for continuing Mr. Cantrell's deposition, consistent with Mr. Cantrell's health condition, and his deposition must be taken as soon as his health permits. Any delays in

scheduling Mr. Cantrell's deposition immediately because of health reasons, or other ground rules for monitoring Mr. Cantrell's health during his deposition, must by supported by an opinion of Mr. Cantrell's doctor provided to the defendants' counsel. And reassessments of Mr. Cantrell's health by a written opinion of Mr. Cantrell's doctor—to the extent it continues to delay his deposition—must be made every three weeks and also supplied to the defendants' counsel. The court declines to require Mr. Cantrell to bring a doctor with him to his deposition or have one on call, and will not prohibit Mr. Cantrell from discontinuing testimony for health reasons without the authority of a medical professional. The court will not interfere with Mr. Cantrell's right to "listen to his body" and to determine what his health permits.

As to the defendants' request for an order that Mr. Cantrell be prevented from submitting any affidavits or declarations in this litigation until his deposition is completed, the request is premature. If an affidavit of declaration by Mr. Cantrell is submitted and the defendants have not completed his deposition, the court will address the propriety of allowing or striking the affidavit or declaration based on its content and the circumstances of his deposition to that point.

## Conclusion

CleanTech's motion for a protective order (Dkt. 181) is GRANTED in PART and DENIED in PART, as provided in this order.

So ORDERED.

Date: 11/04/2011

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

Distribution: All counsel of record