**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

---

IN RE: METHOD OF PROCESSING
ETHANOL BYPRODUCTS AND                    Master Case No.: 1:10-ml-2181-LJM-DML
RELATED SUBSYSTEMS ('858)
PATENT LITIGATION

THIS DOCUMENT RELATES TO:
1:10-cv-0180-LJM-DML
1:10-cv-8001-LJM-DML
1:10-cv-8002-JLM-DML
1:10-cv-8008-LJM-DML
1:10-cv-8009-LJM-DML

---

**MEMORANDUM IN SUPPORT OF DEFENDANTS LINCOLNWAY ENERGY, LLC,
LINCOLNLAND AGRI-ENERGY, LLC, ICM, INC., DAVID VANDERGRIND,
FLOTTWEG SEPARATION TECHNOLOGY, INC., CARDINAL ETHANOL, LLC,
BLUE FLINT ETHANOL LLC, BIG RIVER RESOURCES WEST BURLINGTON, LLC
AND BIG RIVER RESOURCES GALVA, LLC JOINT MOTION FOR SUMMARY
JUDGMENT OF INVALIDITY AND NONINFRINGEMENT OF U.S. PATENT NO.
8,168,037 AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT OF INFRINGEMENT**

10374702v2

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS .............................................. 1

STATEMENT OF DISPUTED MATERIAL FACTS AND INCORPORATION BY REFERENCE .............................................................................................................. 10

BACKGROUND ......................................................................................................... 11

LEGAL STANDARD FOR SUMMARY JUDGMENT ............................................. 19

ARGUMENT ............................................................................................................... 20

    I.     The '037 Patent is Invalid and Unenforceable ...................................... 20

          A.     The Winsness '037 Patent is invalid under 35 U.S.C. § 102(e) because all claims include a step of recovering oil from concentrated thin stillage, which is fully disclosed in the '858 patent and is admitted to be a joint concept of David Winsness and David Cantrell. .............................................................. 20

          B.     The '037 patent should be declared unenforceable because CleanTech knowingly maintained false representations to the Examiner about the disclosure and teaching of the '858 patent. ............. 23

          C.     All claims of the '037 patent are invalid under 35 U.S.C. § 112 for lack of enablement. ................................................................. 24

          D.     The '037 patent is invalid as obvious. .................................................... 26

          E.     The Court's construction of "oil" altered the scope of the claim as written and should be reconsidered and reconstrued. ............................. 31

          F.     Claim 8 of the '037 patent is invalid under 35 U.S.C. 112(2) for lack of enablement. ................................................................................. 37

          G.     The Plaintiff has Failed to Show the '037 Defendants Practice the Claimed Method ................................................................................... 37

CONCLUSION ............................................................................................................. 42

i

## TABLE OF AUTHORITIES

**CASES**

*AK Steel Corp. v. Sollac,* 344 F.3d 1234 (Fed. Cir. 2003)...........................................................25

*Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336 (Fed. Cir. 2002) ..................................32

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................................19

*Atlas Powder Co. v. E.I. du Pont de Nemours & Co.,* 750 F.2d 1569 (1984) ..............................25

*Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792 (Fed. Cir. 1990) ................................32

*CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359 (Fed. Cir. 2002)......................................41

*Celotex Corp. v. Catret*, 477 U.S. 317 (1986) ..............................................................................19

*Chef Am., Inc. v. Lamb-Weston, Inc.,* 358 F.3d 1371 (Fed. Cir. 2004) ......................................25

*Cleveland v. Porca Co.*, 38 F.3d 289 (7th Cir. 1994)...................................................................19

*Cliff v. Bd. of Sch. Comm'rs*, 42 F.3d 403 (7th Cir. 1994) ..........................................................20

*Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.,* 214 F.3d 1302 (Fed. Cir. 2000)..............32

*EMI Group N. Am., Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342 (Fed. Cir. 2001).......25

*Ex parte DesOrmeaux,* 25 U.S.P.Q.2d 2040 (Bd. Pat. App. & Inter. 1992)................................20

*Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379 (Fed. Cir. 2008) ......................41

*In re Fouche,* 439 F.2d 1237 (CCPA 1971*)*................................................................................25

*In re Giacomini,* 612 F.3d 1380 (Fed. Cir. 2010) ........................................................................20

*In re Land,* 368 F.2d 866 (CCPA 1966) ......................................................................................20

*In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511 (Fed. Cir. 2012)..................................23

*In re Swartz,* 222 F.3d 862 (Fed. Cir. 2000) ...............................................................................25

*In re Vaeck,* 947 F.2d 488 (Fed. Cir. 1991) .................................................................................25

*Johnston v. IVAC Corp.*, 885 F.2d 1574 (Fed. Cir. 1989) ...........................................................19

*K-2 Corp. v. Salomon S.A.,* 191 F.3d 1356 (Fed. Cir. 1999) .......................................................32

*Liebel-Flarsheim Co. v. Medrad, Inc.,* 481 F.3d 1371 (Fed. Cir. 2007)......................................37

*McDonnell v. Cournia*, 990 F.2d 963 (7th Cir. 1993) ..................................................................20

*Process Control Corp. v. Hydreclaim Corp.,* 190 F.3d 1350 (Fed. Cir. 1999) ......................32, 33

*Rhine v. Casio, Inc.,* 183 F.3d 1342 (Fed. Cir. 1999)..................................................................32

10374702v2

*Seattle Box Co. v. Indust. Crating & Packing, Inc.,* 731 F.2d 818 (Fed. Cir. 1984) .............. 32, 36

*Sitrick v. Dreamworks, LLC,* 516 F.3d 993 (Fed. Cir. 2008)........................................................ 37

*Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276 (Fed. Cir. 2011) ........................ 24

*Thorner v. Sony Computer Entertainment America, LLC*, 669 F.3d 1362 (Fed. Cir. 2012) ........ 41

*United States v. Diebold, Inc.*, 369 U.S. 654 (1962)........................................................................ 19

*United States v. Telectronics, Inc.,* 857 F.2d 778 (Fed. Cir. 1988) ............................................. 25

*Vukadinovich v. Bd. of Sch. Trs.*, 278 F.3d 693 (7th Cir. 2002) .................................................. 20

*Young Dental Mfg. Co. v. Q3 Special Prods., Inc.,* 112 F.3d 1137 (Fed. Cir. 1997) ................... 36

## OTHER AUTHORITIES

35 U.S.C. § 101............................................................................................................................... 26

35 U.S.C. § 102(e) ................................................................................................................... passim

35 U.S.C. § 103(a) ....................................................................................................................... 1, 29

35 U.S.C. § 112......................................................................................................................... 1, 25, 41

35 U.S.C. § 112(1) .......................................................................................................................... 25

35 U.S.C. § 112(2) .......................................................................................................................... 38

37 CFR § 1.56(b)(1)-(2)(i), (ii) ...................................................................................................... 24

Fed. R. Civ. P. 56(c) .................................................................................................................. 19, 20

Fed. R. Civ. P. 56(c)(1)................................................................................................................... 20

MPEP § 2136.04 ............................................................................................................................. 21

## INTRODUCTION

Defendants Lincolnway Energy, LLC, Lincolnland Agri-Energy, LLC, ICM, Inc., David VanderGrind, Flottweg Separation Technology, Inc., Cardinal Ethanol, LLC, Blue Flint Ethanol LLC, Big River Resources West Burlington, LLC and Big River Resources Galva, LLC ("the '037 Defendants") submit this brief in support of their Joint Motion for Summary Judgment of Invalidity and Noninfringement of U.S. Patent No. 8,168,037 (" '037 patent") and in opposition to Plaintiff GS CleanTech Inc.'s ("CleanTech") Motion for Summary Judgment of Infringement.

CleanTech cannot succeed on its claims of infringement of the '037 patent. First and foremost, the '037 patent is invalid or unenforceable for several reasons, including: (1) invalid under 35 U.S.C. § 102(e) because the claimed invention of the '037 patent was disclosed by another in a prior patent; (2) invalid under 35 U.S.C. § 112 for lack of enablement; (3) unenforceable based on inequitable conduct by patent counsel; and (4) invalid under 35 U.S.C. § 103(a) because the claimed invention is obvious in light of the prior art.

In addition, even if the '037 patent were valid and enforceable, the '037 Defendants do not practice the claimed method and thus, do not infringe the asserted claims of the '037 patent.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. U.S. Patent No. 8,168,037 (the '037 patent) is based on and claims priority to a U.S. Provisional Patent application (serial no. 60/661,733), filed on March 14, 2005. (Master Doc. 786-5, Exhibit E).

2. The '037 patent issued from a U.S. Patent Application (serial no. 11/856,150), filed on September 17, 2007 (the "'150 application"). (Master Doc. 786-1, Exhibit A).

3. As filed, neither the '733 provisional application nor the '150 application disclosed the term "mechanically processing."

1

10374702v2

4.      The term "mechanically processing" is broader than the term "centrifuging." (Master Doc. 179, '858 Markman Hearing Tr. at 17:6-8).

5.      The term "mechanically processing" was added to the claims (ultimately claim 8 of the '037 patent) during prosecution.  (Master Doc. 785-2, CleanTech Opening Brief Exhibit A, Part 2 at 55).

6.      The sole named inventor of the '037 patent is David Winsness. (Master Doc. 786-1, Exhibit A).

7.      The '037 patent involves the typical ethanol production dry milling process. (Master Doc. 786-1, Exhibit A, '037 patent; Master Doc. 1007, '037 patent Markman Hearing Tr. at 3:23-24).

8.      "[T]he dry milling process utilizes the starch in the corn or other grain to produce ethanol through fermentation, and it creates a waste stream comprised of byproducts termed 'whole stillage.'"  (Master Doc. 169, '858 patent Claim Construction Order at 2).

9.      Whole stillage is then "separated into products known as "distillers wet grains" and "thin stillage." (*Id.*).

10.     Thin stillage typically has 5-6% solids, which equates to about 94-95% water. (SJ Ex. R, Master Doc. 945-10, Willgohs '233, Col. 1, lines 47-48).

11.     The typical ethanol plant processed the thin stillage through an evaporation system to reduce the moisture content of the thin stillage and produce what was known as "syrup" of typically 30-50% solids (i.e., 50-70% water).  (Master Doc. 945-10, Willgohs '233, Col. 1, lines 57-59; *see also* Exhibit A1 (filed in conjunction with this memorandum), Alcohol Textbook, 4th Ed. at 369).

12.     The syrup was then typically added to the distillers wet grains and dried in a dryer to form animal feed.  The evaporator system was known to use four to five times less energy to remove water from the thin stillage than the dryer.  (Exhibit A1, Alcohol Textbook, 4th ed. at 366).

13.     The '037 patent, much like the '858 patent, is involved in the removal of corn oil from concentrated thin stillage.  (Master Doc. 786-1, Exhibit A, '037 patent; Master Doc. 1007, '037 Patent Markman Hearing Transcript at 4:1-4).

14.     The '037 patent incorporates much of the '858 patent, as specifically shown in figures 1-4 of the '037 patent.  (Master Doc. 1007, '037 Patent Markman Tr. at 4:17-19).  The Background of the Invention, Figures 1-4, and the Detailed Description of the Invention for Figures 1-4 of the '037 patent are substantially the same as the '858 patent.  (*Id*).  Figures 1-4 of the '858 patent are prior art to the '037 patent under 35 U.S.C. § 102(e).  (*Id*. at 13:3-5).

15.     The '858 patent claims priority to U.S. Provisional Patent application No. 60/602,050, filed on August 17, 2004 (the "'050 provisional application").  (Master Doc. 120-2, Exhibit 10).

16.     The '858 patent names as joint inventors David Winsness and David Cantrell.  (*Id*.).

17.     The '858 patent is generally directed to a method of recovering corn oil from concentrated thin stillage by mechanically processing. (*Id*.).

18.     The '858 patent discloses that the invention is carried out by positioning a centrifuge downstream from the evaporation system located in the typical ethanol plant, and by sending the concentrated thin stillage from the evaporation system to the centrifuge to remove the oil.  (*Id*.).

19. The concentrated thin stillage leaving the centrifuge has less oil in it than it had before entering the centrifuge (the "de-oiled concentrated thin stillage"). (*Id.*).

20. After oil has been removed from the concentrated thin stillage, the de-oiled concentrated thin stillage is sent to be mixed with the wet distillers grains and dried, as was ordinarily done with concentrated thin stillage leaving the evaporation system in a typical ethanol plant. (*Id.*, Col. 4, lines 54-57).

21. All claims of the '858 patent are directed to an invention that was jointly conceived by David Cantrell and David Winsness. (Master Doc. 786-2, Ex. B, Response to Interrogatory No. 2).

22. David Cantrell is acknowledged as having contributed to the idea of concentrating thin stillage before performing a mechanical oil removal step. (Master Docs. 786-3 and 786-4, Exs. C and D).

23. The '858 patent further discloses that the syrup leaving the centrifuge may be evaporated and processed again in a further effort to recover oil before drying. (Master Doc. 120-2, Exhibit 10, '858 patent, Col. 5:46-48).

24. None of the claims of the '858 patent are directed to the concept of performing additional evaporation of the syrup leaving the centrifuge. (*See* Master Doc. 120-2, Exhibit 10).

25. The '516, '517 and '484 patents, which are continuations of the '858 patent, do not claim the concept of performing additional evaporation of the syrup leaving the centrifuge.

26. The '858 patent is prior art to the '037 patent, at least for the subject matter disclosed relating to Figures 1-4. (Master Doc. 1007, '037 Markman Hearing Tr. at 13:3-5).

27. The terms "thin stillage concentrate"/"concentrated thin stillage"/"the concentrate"; "recovering oil/separating oil"; and "mechanically processing" from the '037

4

10374702v2

patent have been construed the same way as those terms were construed relative to the '858 patent. (*See, e.g.*, Master Doc. 835, '037 Markham Order at 14, 16, 21 and 25).

28.     The claims of the '037 patent are directed only to the embodiment of the alleged invention shown in and described relative to Figure 5.  (Master Doc. 1007, '037 patent Markman Tr. at 4:19-23).

29.     The alleged invention of Figure 5 comprises recovering the oil from concentrated thin stillage, much like is disclosed in the '858 patent.  (*Id.*).

30.     Figure 5 and related disclosure of the '037 patent deals with the concept of further processing of the de-oiled concentrated thin stillage after oil has been removed by the centrifuge. (*Id.* at 4:24 – 5:8).

31.     As shown in a portion of Figure 5 below, thin stillage is processed in evaporator 12 until the water content is reduced to 70%.  The concentrated thin stillage is fed to centrifuge 14 that produces three separate streams:  a corn oil stream, a suspended solids or sludge stream, and a de-oiled concentrated thin stillage (syrup) stream.  (Master Doc. 1007, '037 patent Markman Tr. at 6:16-25).  Because the centrifuge removes some of the solids as a separate stream, the de-oiled syrup stream has a reduced solids composition.  According to Figure 5, of the 9,460 pounds per hour of solids in the syrup before processing in the centrifuge, about one third, or 3,153 pounds per hour is removed from the syrup by the centrifuge.

10374702v2



Fig. 5

32.     The '037 patent discloses that "[t]his syrup," (i.e., the reduced solids, de-oiled syrup) "may be further concentrated, such as by using an evaporator, to thus minimize the amount of moisture in it. The example shown in Figure 5 shows that the further evaporation lowers the moisture content of the de-oiled, reduced solids syrup to about 50% moisture. After the de-oiled, reduced solids syrup has been further evaporated, it is added to the wet distillers grains and dried just as was done with concentrated thin stillage in the typical ethanol plant. (Master Doc. 1007 '037 patent Markman Tr. at 7:5-10).

33.     Every claim of the '037 patent is directed to a method of processing concentrated thin stillage that in part comprises recovering oil from the concentrated thin stillage by centrifugation. (Master Doc. 786-1, Exhibit A, '037 patent claims).

6

10374702v2

34.     Throughout prosecution of the '150 application, CleanTech maintained that the prior art did not disclose recovering oil from concentrated thin stillage and further processing the thin stillage concentrate through more evaporation.  (Master Doc. 975-4, Exhibit B, '037 patent filewrapper, Amendment and Response dated November 24, 2009; Amendment and Response dated June 22, 2010) ("the cited references fail to teach or suggest a method of processing concentrated thin stillage created during a dry milling process used for producing ethanol from corn, comprising recovering oil from the concentrated thin stillage; and further evaporating the concentrated thin stillage ….").

35.     On August 13, 2010, the USPTO issued an office action raising for the first time that claim 6 was rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims 8-9 of the '858 patent, in view of other cited references. (Master Doc. 785-3, CleanTech Opening Brief Exhibit A, Part 3 at 213).  In response, CleanTech filed the following response:

> The claimed process is markedly different from that disclosed in US Pat. No. 7,601,858 and Application No. 12/559,136.  The claimed process is generally directed to, *inter alia*, evaporating thin stillage concentrate after oil removal to further reduce the moisture content of the concentrate; and mixing the concentrate with the reduced moisture content with distillers wet grains. **This feature is neither taught nor suggested in U.S. Pat. No. 7,601,858** and Application No. 12/559,136.  Nowhere is there any disclosure or suggestion of a post oil process that include evaporating the thin stillage concentrate to further reduce the moisture content.  As discussed by Applicants [sic], the process improves dryer efficiency (see Application, page 14, ll. 1-14).  While Applicants admit that the subject matter of US Pat. No. 7,601,858 and Application No. 12/559,136 is somewhat similar in that oil is separated from the thin stillage concentrate to form a thin stillage concentrate with substantially less oil contained therein, **there is no disclosure whatsoever of taking this post oil recovered thin stillage concentrate and subjecting this post oil recovered thin stillage concentrate to an evaporation process to further reduce the moisture content**.

(Master Doc. 785-3, CleanTech Opening Brief, Exhibit A, Part 3 at 236) (Emphasis added).

7

10374702v2

36.     On February 25, 2011, the USPTO issued a final office action maintaining the rejection of claim 6 for the same reasons originally set forth on page 4 of the previous office action. (Master Doc. 785-3, CleanTech Opening Brief Exhibit A, Part 3 at 249).  Again, in a response filed May 5, 2011, CleanTech argued as follows:

> Both US Pat. No. 7,601,858 and Application No. 12/559,136 generally describe adding the thin stillage concentrate to the wet distillers grains, which are then sent to a dryer for further drying to form the dried distillers grains.  Nowhere is there any disclosure or suggestion of a process that includes taking the thin stillage concentrate, after oil recovery, **and evaporating the thin stillage concentrate to form an evaporated thin stillage concentrate**, wherein it is the evaporated thin stillage concentrate that is then mixed with the wet distillers grains.

(Master Doc. 785-3, CleanTech Opening Brief Exhibit A, Part 6 at 349) (Emphasis added).

37.     On November 9, 2011, CleanTech filed a Supplemental Amendment and Response after a telephone conference with the Examiner.  In remarks, CleanTech indicated that "the amendment and response filed May 5, 2011 with a Request for Continued Examination in response to the Final Office Action February 25-2011 was discussed in greater detail."  (Master Doc. 785-8, CleanTech Opening Brief Exhibit A, Part 8 at 423).  No withdrawal or correction of the arguments presented in the May 5, 2011 office action was made.

38.     CleanTech's patent counsel knew or should have known that the statements made to the USPTO about the '858 patent, i.e., that "**there is no disclosure whatsoever of taking this post oil recovered thin stillage concentrate and subjecting this post oil recovered thin stillage concentrate to an evaporation process to further reduce the moisture content**" were factually untrue.

39.     Contemporaneous with the arguments CleanTech's patent counsel was making to the USPTO, Counsel for CleanTech made completely contrary remarks to this Court about the

8

'858 patent.[1]    On August 22, 2011, a Markman hearing was conducted before this Court to interpret the claims of the '858 patent.  During this hearing, Michael Rye, CleanTech's litigation counsel, expressly stated to the Court that in column 5, lines 45-47 of the '858 patent, it says "'Modifications or variations are also possible.  For example, **the syrup recovered from the centrifuge may be evaporated and processed again in a further effort to recover oil before drying**.'  That type of thing is contemplated; and it's also contemplated again by the open claim language, the preamble, that says a method comprising which allows for doing things in addition to and allows for repeating the process."  (Master Doc. 179, '858 patent Markman Transcript at 124: 11-18) (emphasis added)).

40.    On April 19, 2012, about a week and a half prior to the May 1, 2012 grant date of the '037 patent, CleanTech filed another continuation patent application (Serial No. 13/450,997) related to the '858 patent family.  The '997 patent application was filed by Peter Hagerty, the same patent attorney that prosecuted the '037 patent.  (Exhibit A2 (filed in conjunction with this memorandum), '997 Patent Application).

41.    Claim 1 of the '997 patent application as filed claimed a method of recovering an oil-containing portion from thin stillage that comprised:  "evaporating the thin stillage to remove water and form a concentrated byproduct; and recovering at least a portion of the oil-containing portion from the concentrated byproduct by mechanically processing the concentrated by product …."  Claim 9, which depended from claim 1, further claimed:  "**evaporating the concentrated byproduct to further reduce the moisture content**."  (*Id*., emphasis added).  Claims 12, 19 and 27 also claimed a further evaporation step after oil had been recovered from the concentrated thin stillage.

---

[1] CleanTech's patent counsel changed at the beginning of prosecution of the '037 patent from Mr. Dorisio to an attorney with the same law firm as CleanTech's litigation counsel. (Master Doc. 785-1, Plaintiff's Opening Brief, Exhibit A, Part 1 at 81).

9

10374702v2

42.    The concept of utilizing an evaporation step to reduce moisture content of a biological process stream after an oil separation step is disclosed in prior art. Two such references are product brochures published by Westfalia Separator Industry GmbH.  One is entitled: "Decanters and Separators for Industrial Fish Processing" published in 1999 (Master Doc. 945-17, Ex. AA).  The second is entitled: "Whey Processing Lines" published in 1988 (Master Doc. 945-19, Ex. CC).

## STATEMENT OF DISPUTED MATERIAL FACTS AND INCORPORATION BY REFERENCE

The '037 Defendants hereby incorporate by reference as if fully set forth herein the responses, inclusive of all statements as to facts, made to the Plaintiff's Statement of Undisputed Material Facts, said responses set forth in the Memorandum of Law in Support of Defendants' Motion for Summary Judgment of Non-infringement and in Opposition to Plaintiff's Motions for Summary Judgment of Infringement as filed with the Court on or about September 23, 2013 (Master Doc. 932).  To the extent applicable, the '037 Defendants further incorporate by reference herein all positions, arguments and supporting statements of fact pertaining to the '858 patent family as set forth in the Memorandum of Law in Support of Defendants' Motion for Summary Judgment of Non-infringement and in Opposition to Plaintiff's Motions for Summary Judgment of Infringement as filed with the Court on September 23, 2013 (Master Doc. 932) and in the Memorandum of Law in Support of Defendants' Joint Motion for Summary Judgment of Invalidity and to Dismiss Plaintiff's Request for Provisional Remedies and Enhanced Damages for Willful Infringement as filed with the Court on or about September 23, 2013 (Master Doc. 941).

10374702v2

**BACKGROUND**

### A.    Prior Art of Thin Stillage Processing

As the Court is aware from the Markman briefing for the '858 patent, "the dry milling process utilizes the starch in the corn or other grain to produce ethanol through fermentation, and it creates a waste stream comprised of byproducts termed 'whole stillage.'"   (Statement Of Undisputed Material Facts ("SOF") ¶ 2).  Whole stillage is then "separated into products known as "distillers wet grains" and "thin stillage." (*Id.*).  Thin stillage typically has 5-6% solids, which equates to about 94-95% water.  (SOF ¶ 10). The typical ethanol plant processed the thin stillage through an evaporation system to reduce the moisture content of the thin stillage and produce what was known as "syrup" of typically 30-50% solids (i.e., 50-70% water).  (SOF ¶ 11).  The syrup was then typically added to the distillers wet grains and dried in a dryer to form animal feed.  The evaporator system was known to use four to five times less energy to remove water from the thin stillage than the dryer.  (SOF ¶ 12).

The '858 patent claims priority to U.S. Provisional Patent Application No. 60/602,050, filed on August 17, 2004 (the "'050 provisional application").  (SOF ¶ 15 ).  In general, the '858 patent is directed to a method of recovering corn oil from thin stillage that has been concentrated/evaporated to reduce the moisture content, and then processed mechanically (i.e., centrifuged) to separate corn oil from the concentrated thin stillage.  (SOF ¶ 17 ).  The '858 patent discloses that the invention is carried out by positioning a centrifuge downstream from the evaporation system, and sending the concentrated thin stillage from the evaporation system to the centrifuge to perform the oil removal process.[2]  (SOF ¶ 18).  After oil has been removed from the concentrated thin stillage, the concentrated thin stillage leaving the centrifuge is sent to be mixed

---

[2] The idea of recovering oil from concentrated thin stillage was jointly developed by David Winsness and David Cantrell.  (SOF ¶ 21).

11

with the wet distillers grains and dried, as was ordinarily done with the concentrated thin stillage after it left the evaporation system. (SOF ¶ 20).

Plaintiff has identified all claims of the '858 patent as being directed to an invention that was jointly conceived by David Cantrell and David Winsness. (SOF ¶ 21). Specifically, David Cantrell is acknowledged as having contributed to the idea of concentrating thin stillage before performing a mechanical oil removal step. (SOF ¶ 22).

The '858 patent further discloses that the syrup leaving the centrifuge may be evaporated and processed again in a further effort to recover oil before drying. (SOF ¶ 23). None of the claims of the '858 patent are directed to the concept of performing additional evaporation of the syrup leaving the centrifuge. (SOF ¶ 24). The three related patents to the '858 patent (the '516, '517 and '484 patents) also do not claim the concept of performing additional evaporation of the syrup leaving the centrifuge. (SOF ¶ 25)

### B.    The '037 Patent

The '037 patent is unrelated to the '858 patent, although it does share common subject matter. (SOF ¶ 14 ). The '037 patent issued from U.S. Patent Application Serial No. 11/856,150, filed on September 17, 2007 (the "'150 application"). (SOF ¶ 2). The '150 application claimed priority to a U.S. Provisional Patent Application Serial No. 60/661,733, filed March 14, 2005. (SOF ¶ 1). David Winsness is the sole named inventor of the '037 patent. (SOF ¶ 6 ).

The Background of the Invention, Figures 1-4, and the Detailed Description of the Invention for Figures 1-4 of the '037 patent are substantially identical to the '858 patent. (SOF ¶ 14). Because the claims of the '858 patent are directed to the subject matter of Figures 1-4 and David Winsness and David Cantrell are joint inventors as to that subject matter, the '858 patent is prior art to the '037 patent for the subject matter disclosed relative to Figures 1-4. Due to the

12

10374702v2

overlap of the '037 disclosure with the '858 disclosure, the Court construed the terms "thin stillage concentrate"/"concentrated thin stillage"/"the concentrate"; "recovering oil/separating oil"; and "mechanically processing" from the '037 patent claims the same as the '858 patent claims. (SOF ¶ 27).

Figure 5 and related disclosure of the '037 patent deals with the concept of further processing of the concentrated thin stillage after oil has been removed by the centrifuge.



Fig. 5

As shown in Figure 5, thin stillage is processed in evaporator (12) until the water content is reduced to 70%. The concentrated thin stillage is fed to centrifuge (14) that produces three separate fractions or streams: a corn oil stream, a suspended solids or sludge stream, and a syrup stream. The syrup stream, by virtue of the centrifuge's ability to remove some of the suspended solids, has a reduced solids composition. According to Figure 5, of the 9,460 pounds per hour of

13

solids in the syrup before processing in the centrifuge, about one third, or 3,153 pounds per hour is removed from the syrup by the centrifuge. The '037 patent discloses that "[t]his syrup," the reduced solids syrup leaving the centrifuge, "may be further concentrated, such as by using an evaporator, to thus minimize the amount of moisture in it (in the example, to about 50%)." '037 patent, Col. 7, lines 24-26. The removal of suspended solids from the syrup is identified as a benefit because such solids "are most responsible for fouling the corresponding heat exchangers of the evaporator 12." *Id*., Col. 7, lines 49-52.

The '037 patent issued with 15 claims. Claim 1 of the '037 patent is representative:

A method of processing thin stillage concentrate created during a dry milling process used for producing ethanol from corn, comprising:

    a.      recovering oil from the thin stillage concentrate and

    b.      subsequently evaporating the concentrated thin stillage in an evaporator to further reduce a moisture content and form an evaporated thin stillage concentrate, wherein the evaporated thin stillage concentrate has a lower moisture content than the thin stillage concentrate; and

    c.      mixing the evaporated thin stillage concentrate with distillers wet grains.

The Court has construed the following terms as indicated below:

| TERM(S) | COURT'S CONSTRUCTION |
|---|---|
| thin stillage concentrate/concentrated thin stillage/the concentrate | Syrup containing water, oil and solids resulting from the concentrating or evaporating process |
| recovering oil/separating oil | Obtaining (recovering)/extracting (separating) a product that is substantially oil, where substantially means "largely or mostly" |
| subsequently evaporating the thin stillage concentrate in an evaporator to further reduce a moisture content and form an | To subject the post-oil recovery thin stillage concentrate to further or additional evaporation |

14

| | |
|---|---|
| evaporated thin stillage concentrate/subsequently evaporating the thin stillage concentrate to further reduce the moisture content of the thin stillage concentrate and form an evaporated thin stillage concentrate/evaporating the thin stillage concentrate to further reduce a moisture content of the thin stillage concentrate and form an evaporated thin stillage concentrate/evaporating the concentrated thin stillage to reduce a moisture content and form an evaporated thin stillage concentrate prior to mixing with distillers wet grains | |
| mechanical processing | To subject to a mechanical device (or devices) to effect a particular result |

## C.   The Prosecution History of the '037 Patent

The claims of the '150 application were directed to, among other things, methods that included the recovery of oil from concentrated thin stillage and further evaporation of the thin stillage concentrate after the oil recovery.[3]  Throughout prosecution, CleanTech maintained that the prior art did not disclose recovering oil from thin stillage concentrate and further processing the thin stillage concentrate through more evaporation.  (*See, e.g.,* Master Doc. 785-2, CleanTech Opening Brief Exhibit A, Part 2 at 143, Amendment and Response dated November 24, 2009; Master Doc. 785-3, CleanTech Opening Brief Exhibit A, Part 3 at 188, Amendment and Response dated June 22, 2010) ("the cited references fail to teach or suggest a method of processing concentrated thin stillage created during a dry milling process used for producing

---

[3] Claim 1 of the '150 application as filed was as follows:

A method of processing concentrated thin stillage created during a dry milling process used for producing ethanol from corn, comprising: recovering oil from the concentrated thin stillage; and further evaporating the concentrated thin stillage.

15

ethanol from corn, comprising recovering oil from the concentrated thin stillage; and further evaporating the concentrated thin stillage ….")).

On August 13, 2010, the USPTO issued an office action raising for the first time that claim 6 was rejected on the ground of nonstatutory obviousness-type double patenting as being unpatentable over claims 8-9 of the '858 patent, in view of other cited references. (Master Doc. 785-3, CleanTech Opening Brief Exhibit A, Part 3 at 213). In response, CleanTech filed the following response:

> The claimed process is markedly different from that disclosed in US Pat. No. 7,601,858 and Application No. 12/559,136. The claimed process is generally directed to, *inter alia*, evaporating thin stillage concentrate after oil removal to further reduce the moisture content of the concentrate; and mixing the concentrate with the reduced moisture content with distillers wet grains. **This feature is neither taught nor suggested in U.S. Pat. No. 7,601,858** and Application No. 12/559,136. Nowhere is there any disclosure or suggestion of a post oil process that include evaporating the thin stillage concentrate to further reduce the moisture content. As discussed by Applicants [sic], the process improves dryer efficiency (see Application, page 14, ll. 1-14). While Applicants admit that the subject matter of US Pat. No. 7,601,858 and Application No. 12/559,136 is somewhat similar in that oil is separated from the thin stillage concentrate to form a thin stillage concentrate with substantially less oil contained therein, **there is no disclosure whatsoever of taking this post oil recovered thin stillage concentrate and subjecting this post oil recovered thin stillage concentrate to an evaporation process to further reduce the moisture content**.

(*Id*. at 236) (Emphasis added).

On February 25, 2011, the USPTO issued a final office action maintaining the rejection of claim 6 for the same reasons originally set forth on page 4 of the previous office action. (*Id*. at 249). Again, in a response filed May 5, 2011, CleanTech argued as follows:

> Both US Pat. No. 7,601,858 and Application No. 12/559,136 generally describe adding the thin stillage concentrate to the wet distillers grains, which are then sent to a dryer for further drying to form the dried distillers grains. Nowhere is there any disclosure or suggestion of a process that includes taking the thin stillage concentrate, after oil recovery, **and evaporating the thin stillage concentrate to form an evaporated thin stillage concentrate**, wherein it is the evaporated thin stillage concentrate that is then mixed with the wet distillers grains.

16

(Master Doc. 785-6, CleanTech Opening Brief Exhibit A, Part 6 at 349) (Emphasis added).

On November 9, 2011, GS CleanTech filed a Supplemental Amendment and Response after a telephone conference with the Examiner.  In remarks, CleanTech indicated that "the amendment and response filed May 5, 2011 with a Request for Continued Examination in response to the Final Office Action February 25-2011 was discussed in greater detail."  (Master Doc. 785-8, CleanTech Opening Brief Exhibit A, Part 8 at 423).  No withdrawal or correction of the arguments presented in the May 5, 2011 office action was made.

Contemporaneous with the arguments CleanTech's patent counsel was making to the USPTO, Counsel for GS CleanTech made completely contrary remarks to this Court about the '858 patent.[4]  On August 22, 2011, a Markman hearing was conducted before this Court to interpret the claims of the '858 patent.  During this hearing, Michael Rye, CleanTech's litigation counsel, expressly stated to the Court that in column 5, lines 45-47 of the '858 patent, it says "'Modifications or variations are also possible.  For example, **the syrup recovered from the centrifuge may be evaporated and processed again in a further effort to recover oil before drying**.'  That type of thing is contemplated; and it's also contemplated again by the open claim language, the preamble, that says a method comprising which allows for doing things in addition to and allows for repeating the process."  (Master Doc. 797-6, '858 Patent Markman Transcript at 124, lines 11-18) (emphasis added)).

As admitted by CleanTech's counsel, the '858 patent discloses that concentrated thin stillage can be processed through a centrifuge/mechanical processor to remove oil and then be processed through an evaporator to further remove moisture.  Even if it is possible that the '858

---

[4] CleanTech's patent counsel changed at the beginning of prosecution of the '037 patent from Mr. Dorisio to an attorney with the same law firm as CleanTech's litigation counsel. (Master Doc. 785-1, Plaintiff's Opening Brief, Exhibit A, Part 1 at 81).

17

patent disclosure concerning additional post-oil recovery processing of syrup for further evaporation somehow evaded CleanTech's patent counsel during prosecution, before the '037 Patent issued, CleanTech and its patent counsel knew or should have known that the statements made to the Examiner during prosecution of the '150 application were not true. On April 19, 2012, about a week and a half prior to the May 1, 2012 grant date of the '037 patent, CleanTech filed another continuation patent application (Serial No. 13/450,997) related to the '858 patent family. (SOF ¶ 40).

While none of the prior issued patents derived from the '858 patent claimed the concept of further evaporation of syrup post centrifugation, the '997 patent application did. Claim 1 of the '997 patent as filed claimed a method of recovering an oil-containing portion from thin stillage that comprised: "evaporating the thin stillage to remove water and form a concentrated byproduct; and recovering at least a portion of the oil-containing portion from the concentrated byproduct by mechanically processing the concentrated by product …." Claim 9, which depended from claim 1, further claimed: "**evaporating the concentrated byproduct to further reduce the moisture content**." (*Id*. emphasis added). Claims 12, 19 and 27 also claimed a further evaporation step after oil had been recovered from the concentrated thin stillage. The '997 patent application was filed by the same patent attorney that had prosecuted the '150 patent application and characterized the '858 patent as containing "**no disclosure whatsoever of taking this post oil recovered thin stillage concentrate and subjecting this post oil recovered thin stillage concentrate to an evaporation process to further reduce the moisture content.**" No attempt was made to withdraw the '037 patent from issue to correct the misstatements made to the Examiner.

18

10374702v2

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is as appropriate in a patent case as in any other. *Johnston v. IVAC Corp.*, 885 F.2d 1574, 1576-77 (Fed. Cir. 1989). Under Federal Rule of Civil Procedure 56, summary judgment must be granted when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Summary judgment is proper if the evidence before the Court "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catret*, 477 U.S. 317, 322 (1986).

A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual issue is "genuine" only if a reasonable trier of fact could find for the non-moving party. *Id.* In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden to show the absence of genuine issues of material fact. Celotex, 477 U.S. at 323 (1986).

Once "a properly supported motion for summary judgment is made," the non-moving party bears the burden to "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250 (internal quotation marks and citation omitted). The party opposing summary judgment "may not rest upon mere allegation or denials of his pleading." *Id.* at 248, 256; *see also Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994). Rather, the opposing party must cite "to particular parts of materials in the record," or show that the moving party "cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Celotex Corp.*, 477 U.S. at 322 ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails

19

to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.") and *Vukadinovich v. Bd. of Sch. Trs.*, 278 F.3d 693, 699 (7th Cir. 2002) (stating that "[t]he nonmovant will successfully oppose summary judgment only when it presents 'definite, competent evidence to rebut the motion'"). Moreover, the opposing party's burden cannot be met with "self-serving allegations that are otherwise without evidentiary support." *Cliff v. Bd. of Sch. Comm'rs*, 42 F.3d 403, 408 (7th Cir. 1994) (citing *McDonnell v. Cournia*, 990 F.2d 963, 969 (7th Cir. 1993).

## ARGUMENT

**I.     The '037 Patent is Invalid and Unenforceable**

    **A.     The Winsness '037 Patent is invalid under 35 U.S.C. § 102(e) because all claims include a step of recovering oil from concentrated thin stillage, which is fully disclosed in the '858 patent and is admitted to be a joint concept of David Winsness and David Cantrell.**

The '037 patent, which lists only David Winsness as an inventor, cannot validly claim and cover subject matter of the '858 patent that was jointly invented by David Winsness and David Cantrell. Pursuant to 35 U.S.C. § 102(e), a person shall be entitled to a patent unless "the invention was described in … a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent." An application that a patent was "granted on" is the first U.S. application to disclose the invention claimed in the patent. A provisional patent application upon which a patent claims priority qualifies as prior art as of the filing date of the provisional application. *In re Giacomini,* 612 F.3d 1380, 1383 (Fed. Cir. 2010). A patent application is "by another" if the inventive entity is different than the later patent. (MPEP § 2136.04) (citing *In re Land,* 368 F.2d 866 (CCPA 1966)). The fact that the application and prior art have one or more inventors in common is immaterial. (*Id.*) (citing *Ex parte DesOrmeaux,* 25 U.S.P.Q.2d 2040 (Bd. Pat. App. & Inter. 1992)). As such, it is clear that the

10374702v2

'858 patent qualifies as Section 102(e) prior art because it is based on U.S. Provisional Patent App. No. 60/602,050, which was filed on August 17, 2004, and it names David Winsness and David Cantrell as co-inventors.[5]  The '037 patent, on the other hand, claims priority to a provisional patent application filed on May 5, 2005, and names David Winsness as the sole inventor.  As will be explained in more detail below, the '037 patent is therefore "by another" relative to the '858 patent.

The '858 patent fully discloses the subject matter of every claim of the '037 patent. Claim 1 of the '037 patent, as previously set forth, is representative of each claim's requirement of an oil recovery step from concentrated thin stillage.  Element a of claim 1 of the '037 patent is set forth in the '858 patent as follows: "[i]n its most basic form, the method comprises recovering oil from the concentrated byproduct.  In one embodiment, the byproduct comprises thin stillage and the method includes the step of evaporating the thin stillage to form a concentrate."  '858 patent, Col. 2, lines 20-25.  In describing the typical dry milling process, the '858 patent discloses that thin stillage is evaporated to create a concentrate or syrup, which is then combined with wet distillers grains and dried to form distillers dried grains with solubles. *Id.*, Col. 1, lines 43-49.  According to element c of claim 1, the '858 patent discloses that after oil has been removed from the syrup, the syrup is mixed with the distillers wet grains and dried in a drum dryer.  *Id.*, Col. 4, lines 54-57.  Elements b and c are disclosed in Column 5, lines 45-48 of the '858 patent, which states that after oil has been removed from the concentrated thin stillage or syrup, "the syrup recovered from the centrifuge may be evaporated and processed again in a

---

[5] While the USPTO erred in failing to raise the Section 102(e) rejection during prosecution of the '037 patent's application, it raised Section 102(e) to reject pending claims in a continuation application of the '037 patent.  (Master Doc. 795-5, Exhibit N, U.S. Pat. App. Serial No. 13/450,991, Office Action dated 11-16-2012).

21

10374702v2

further effort to recovery oil before drying [with the wet distillers grains]." *Id.*, Col. 5, lines 45-48.

Plaintiff has identified all claims of the '858 patent as being directed to an invention that was jointly conceived by David Cantrell and David Winsness. (Master Doc. 786-2, Exhibit B, Response to Interrogatory No. 2.)[6] Plaintiff has admitted that "David Winsness and David Cantrell worked jointly on the subject matter of the claimed invention of the '858, '516, and '517 patents," and that they "both contributed to the conception of the claimed invention." *Id.* David Cantrell is acknowledged by his own testimony and the testimony of David Winsness as having contributed to the idea of concentrating thin stillage (the liquid fraction of whole stillage) before performing a mechanical oil removal step. (SOF ¶ 22). Each claim of the '037 patent incorporates an element of recovering oil from concentrated thin stillage, which is a joint concept of David Winsness and David Cantrell that is fully disclosed and claimed in the '858 patent. The claims of the '037 patent, for which David Winsness alone is named as an inventor, are therefore invalidly directed to an invention disclosed in the '858 patent that is "of another." There is no disputed issue of material fact. Summary Judgment of invalidity of the '037 patent under 35 U.S.C. 102(e) should therefore be granted.

---

[6] Plaintiff objected to Defendants' Interrogatory No. 2, which asked Plaintiff to identify the inventorship for each claim of the '858, '516 and '517 patents, and to identify what idea each identified inventor contributed on an element by element basis. (Master Doc. 786-2, Exhibit B, Response to Interrogatory No. 2.) Plaintiff objected to the request on several bases, but ultimately stated that "David Winsness and David Cantrell worked jointly on the subject matter of the claimed invention of the '858, '516 and, 517 patents. *Id.* Messrs. Winsness and Cantrell both contributed to the conception of the claimed invention, and together formed a definite and permanent idea of the complete and operative invention as it is claimed in the '858, '516 and '517 patents. *Id.*

10374702v2

**B.**     **The '037 patent should be declared unenforceable because CleanTech knowingly maintained false representations to the Examiner about the disclosure and teaching of the '858 patent.[7]**

Throughout prosecution of the '037 patent, CleanTech, through statements made by its patent counsel, Peter Hagarty, to the U.S. Patent and Trademark Office represented that the '858 patent contained "no disclosure whatsoever of taking this post oil recovered thin stillage concentrate and subjecting this post oil recovered thin stillage concentrate to an evaporation process to further reduce the moisture content." It is undisputed that the '858 patent does in fact disclose the concept of processing concentrated thin stillage, after oil has been removed via centrifugation, through further evaporation. (SOF ¶ 23). It is further undisputed that Peter Hagarty knew the '858 patent disclosure disclosed the concept of further evaporation of concentrated thin stillage prior to the issuance of the '037 patent. (SOF ¶¶ 40-41).

Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the U.S. Patent Office. 37 CFR § 1.56(a). The duty to disclose information exists with respect to each pending claim until the claim is cancelled or withdrawn from consideration, or the application becomes abandoned. *Id.* Information is material to patentability when it refutes, or is inconsistent with a position the applicant takes in opposing an argument of unpatentability relied on by the U.S. Patent Office, or in asserting an argument of patentability. 37 CFR § 1.56(b)(1)-(2)(i), (ii).

Inequitable conduct requires proof by clear and convincing evidence that the patent applicant (1) misrepresented information material to patentability, and (2) did so with specific intent to mislead or deceive the USPTO. *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012) (citing *Therasense, Inc. v. Becton, Dickinson and Co.*, 649 F.3d 1276, 1287

---

[7] Discovery on the issue of inequitable conduct is ongoing and the '037 Defendants reserve the right to supplement the record and briefing once that discovery has been completed.

23

(Fed. Cir. 2011).   The specific intent to commit inequitable conduct may be inferred from indirect and circumstantial evidence. *Therasense*, 649 F.3d at 1290.

CleanTech, through its patent counsel, clearly opposed prior art and specifically the '858 patent, based on the argument that "Nowhere is there any disclosure or suggestion of a process that includes taking the thin stillage concentrate, after oil recovery, and evaporating the thin stillage concentrate to form an evaporated thin stillage concentrate, wherein it is the evaporated thin stillage concentrate that is then mixed with the wet distillers grains."  CleanTech knowingly maintained this argument before the USPTO while the claims of the '037 patent were still pending despite knowledge at least as early as the filing of the '997 patent application that the statements were factually false.   Because CleanTech failed to correct material misstatements to the USPTO about the '858 patents clear teaching to perform further evaporation of thin stillage concentrate after oil removal, CleanTech failed in its duty of candor to the USPTO in the course of obtaining the '037 patent.   Accordingly, the '037 patent should be held unenforceable for CleanTech's inequitable conduct in the course of prosecuting and obtaining the '037 patent.

**C.**     **All claims of the '037 patent are invalid under 35 U.S.C. § 112 for lack of enablement.**

Each claim of the '037 patent incorporates an element of recovering oil from "concentrated thin stillage."  The Court has construed "concentrated thin stillage" to mean a "syrup containing water, oil and solids resulting from the concentrating or evaporating process." Since this definition encompasses embodiments of water/oil/solids mixtures at concentrations not disclosed in the '037 patent and for which no operability is possible, the '037 patent must be declared invalid under 35 U.S.C. § 112 as a matter of law.

A patent specification is required to contain a written description of the invention, and the manner and process of making and using it, in such full, clear, concise and exact terms as to

24

enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and must set forth the best mode contemplated by the inventor of carrying out the invention. 35 U.S.C. § 112(1). The test of enablement is whether one reasonably skilled in the art could make or use the invention from the disclosures in the patent coupled with information known in the art without undue experimentation. *United States v. Telectronics, Inc.,* 857 F.2d 778, 785 (Fed. Cir. 1988). Determining enablement is a question of law based on underlying factual findings. *In re Vaeck,* 947 F.2d 488 (Fed. Cir. 1991); *Atlas Powder Co. v. E.I. du Pont de Nemours & Co.,* 750 F.2d 1569, 1576 (1984). If a claim fails to meet the utility requirement (35 U.S.C. § 101) because it is shown to be nonuseful or inoperative, then it fails to meet the how-to-use aspect of enablement requirement of Section 112(1). *In re Fouche,* 439 F.2d 1237 (CCPA 1971). *See also In re Swartz,* 222 F.3d 862, 863 (Fed. Cir. 2000) ("[I]f the claims in an application fail to meet the utility requirement because the invention is inoperative, they also fail to meet the enablement requirement because a person skilled in the art cannot practice the invention."). *EMI Group N. Am., Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1348 (Fed. Cir. 2001). The full scope of the claim must be enabled. *AK Steel Corp. v. Sollac,* 344 F.3d 1234, 1244 (Fed. Cir. 2003). Courts may not redraft claims, whether to make them operable or to sustain their validity. *Chef Am., Inc. v. Lamb-Weston, Inc.,* 358 F.3d 1371, 1374 (Fed. Cir. 2004).

The specification of the '037 patent discloses the ranges of moisture content of concentrated thin stillage that allegedly can be mechanically processed via a centrifuge to recover oil. In one embodiment, concentrated thin stillage having a moisture content of less than about 90%, but ideally about 60-85%, can be processed in a disk stack centrifuge to separate oil from the concentrated thin stillage. ('037 patent, Col. 5, lines 40-48). Other specific

25

embodiments that fall within the stated "ideal" range are disclosed to include concentrated thin stillage at 80% moisture content (*Id*., Col. 6, lines 18-26), and concentrated thin stillage at 60% moisture content.  (*Id*., Col. 6, lines 50-52).  The claims of the '037 patent, however, exceed the scope of the disclosure by a broad reference to "thin stillage concentrate" which may be any oil/water/solids mixture that has been through a concentrating/evaporating process.

Thin stillage is typically known to contain about 94-95% water.  (SOF ¶ 10).  The '037 patent discloses thin stillage having about 8% solids (i.e., about 92% water).  ('037 patent, Col. 6, lines 3-6).  Even a small amount of water removal via evaporation results in a thin stillage that is concentrated.   As such, the claims encompass mixtures that are greater than 90% moisture content.  At the opposite end of the moisture content spectrum, the claims encompass mixtures that have almost all of the water removed, as low as less than 1% moisture content.  The '037 patent explicitly disclaims thin stillage having moisture content ranges above 90% as not suitable for oil recovery.  ('037 patent, Col. 2, lines 1-6).  Because the '037 patent fails to disclose the processing of concentrated thin stillage at these moisture content levels, or that concentrated thin stillage at these moisture content ranges would in fact work, all claims of the '037 patent are invalid under 35 U.S.C. § 112(1).

> **D.**      **The '037 patent is invalid as obvious.**
>
> > **1.**      **The '037 patent is obvious over the '858 patent in combination with either Willgohs or the Alcohol Textbook, 4th Ed.**

Because the '858 patent has an earlier effective filing date, joint inventors and discloses and claims in part a concept of recovering oil from concentrated thin stillage as a joint inventive effort, the '858 patent is 102(e) prior art to all claims of the '037 patent that also include the same concept.  Moreover, Plaintiff admits Figures 1-4 of the '858 patent are prior art to the '037 patent.  (SOF ¶14).  The '037 patent is suggested to be an improvement over the '858, by

26

combining the concept of further evaporation of syrup after oil recovery but before mixing the syrup with wet distillers grains for drying. The claimed improvement of sending the syrup leaving the centrifuge back to the evaporator for further water removal (to the extent it is construed broadly), is an obvious step that is clearly taught and suggested in the prior art.

The '858 patent discloses the method of mechanically processing/centrifuging concentrated thin stillage to remove oil and then mixing the concentrated thin stillage that has had oil removed with distillers wet grains for drying in a dryer. ('858 patent, Col. 4, lines 30-57). The '858 patent discloses that the moisture content of the concentrated thin stillage that is mechanically processed may be as high as less than about 90%. ('858 patent, Col. 2, lines 43-45). A stated benefit of oil removal from concentrated thin stillage is an improved efficiency of the drying process used on the mixture of distillers wet grains and syrup. ('858 patent, Col. 4, lines 8-13).

The person of ordinary skill in the art knows that the cost of removing moisture from concentrated thin stillage that has been added to wet distillers grains for drying is substantially greater in a dryer than it is in an evaporation system. (SOF ¶ 12). The prior art taught that the evaporator system is four to five times more energy efficient in removing water from concentrated thin stillage than a dryer system.[8] (*Id.*). Accordingly, the prior art clearly taught to concentrate thin stillage to as low a moisture content possible, e.g., between about 50-70% moisture content, in an evaporation system before adding the concentrated thin stillage to the wet distillers grains for drying in a dryer. (SOF ¶ 11-12). The POSA armed with the knowledge of the '858 patent teaching to mix de-oiled concentrated thin stillage with distillers wet grains for drying to improve the efficiency of the drying process, and knowing the inefficiencies of drying

---

[8] The Alcohol Textbook was a piece of prior art that was not considered by the U.S. Patent Examiner during examination of the '037 patent.

10374702v2

such a mixture in a dryer if the moisture content of the concentrated thin stillage is high (above the 50-70% moisture content suggested by the prior art), would know to process the concentrated thin stillage in the evaporation system to lower the moisture content before mixing the concentrated thin stillage with the distillers wet grains for drying.  A method of using the evaporation system to process partially concentrated thin stillage, post oil recovery, before mixing the de-oiled concentrated thin stillage with wet distillers grains for drying was  obvious.  As such, claims 1, 4, 5, 6, 7, 9, 10, and 13-15 are invalid as obvious under 35 U.S.C. 103(a).

Dependent claims 2 and 3 of the '037 patent are clearly taught by the '858 patent and are also invalid.

- Use of a disk stack centrifuge to separate oil from thin stillage concentrate (claim 2) ('858 patent, Col. 4, lines 43-48).

- Use of disk stack centrifuge to separate suspended solids (claim 3) ('858 patent, Col. 4, lines 2-7).

2. **The '037 patent is obvious over the '858 patent in combination with either "Decanters and Separators for Industrial Fish Processing" or "Whey Processing Lines."**

Prior art references from the fish processing industry and the dairy industry disclose the use of centrifugation to separate an oil stream and a remaining stream, the latter of which is thereafter subjected to further reduction of moisture by evaporation before additional processing steps occur.  These references were not before the United States Patent and Trademark Office at the time of the prosecution of the '037 patent.

In particular, attention is directed to the brochure entitled: "Decanters and Separators for Industrial Fish Processing," published by Westfalia Separator Industry GmbH in 1999 (Master Doc. 945, Ex. AA) (hereinafter referred to as "Westfalia Fish Processing"), and a brochure

28

entitled, "Whey Processing Lines," published by Westfalia Separator Industry GmbH in 1988 (Master Doc. 945, Ex. CC) (hereinafter referred to as "Westfalia Whey Processing").

The Westfalia Fish Processing brochure provides a detailed process flow diagram pertaining to methods for recovery of fish oil. One such diagram is found on pages 10-11, and is a representation of the "conventional process for the recovery of fish meal and fish oil." The conventional process generally operates as follows:

- Raw fish pieces are cooked and then introduced to a Press whereby two streams are separated – a "Press cake" (primarily solids) stream and a "Presswater" (primarily liquid) stream. This process step is similar to the ethanol plant process where whole stillage is received from the distillation step and processed in a centrifuge to produce a wet cake (primarily solids) stream (distillers wet grains) and a thin stillage (primarily liquid) stream.

- The presswater stream is further processed and heated to a temperature of around 95° C where it is introduced to a disk stack centrifuge resulting in the separation of an oil stream, a solids stream, and a liquid stream called "stickwater". This step in the fish oil process is similar to the corn oil separation at an ethanol plant.

- The stickwater stream is then subjected to moisture reduction by way of evaporation prior to further processing. This step is similar to the process disclosed in the '037 patent whereby the syrup byproduct of the oil separation step is either returned to the evaporation step or is introduced to a separate evaporator for purposes of further reducing the moisture content prior to additional processing.

29

The 1988 Westfalia Whey Processing brochure also contains a simple diagram found at Figure 29 on page 3. Whey is "the watery part of milk that is separated from the coagulable part or curd especially in the process of making cheese and that is rich in lactose, minerals, and vitamins and contains lactalbumin and traces of fat." *See http://www.merriam-webster.com/dictionary/whey*. In this process flow diagram, the whey concentrate is subjected to moisture reduction steps by passing the stream through two evaporators – stage 1 and stage 2. After this evaporation occurs, the stream is subjected to a separation step whereat a disk stack centrifuge is employed to separate an oil stream (cream – flow stream 10). The remaining de-oiled stream is thereafter returned to the evaporation system where it is further subjected to additional moisture reduction in evaporator stage 3 and evaporator stage 4 prior to additional processing to isolate the whey protein. Below is a copy of Figure 29:

10374702v2



1  Whey concentrate    4  Evaporator stage II    7  Separator           9  To evaporator stage IV
2  Evaporator stage I  5  Tank                   8  Evaporator stage III  10  Cream
3  Pump                6  Pump

**E.      The Court's construction of "oil" altered the scope of the claim as written and should be reconsidered and reconstrued.**

The '037 patent, like the '858 patent family, claims in various language methods of recovering "oil" from thin stillage concentrate.  The Court properly construed the "concentrate" terms to mean syrup containing water, oil and solids resulting from the concentrating or evaporating process.  (Master Doc. 835 at 26).  The '037 patent claims specify that "oil" is recovered/separated.  The Court adopted a construction of "recovering oil/separating oil" as "obtaining (recovering)/extracting (separating) a product that is "substantially (meaning largely or mostly) oil."  *Id*.  In view of CleanTech's assertion that Cardinal Ethanol as well as the other

31

'037 Defendants meet the "oil" limitation, the metes and bounds of "oil" versus the "substantially oil" remains a subject of concern.

As the Court acknowledged in its Supplemental Order on Claim Construction for the '858 patent (Master Doc. 248 at 22), in *Seattle Box*, the "Federal Circuit taught that since the claims *issued* with a 'substantially equal to' limitation, 'some leeway is appropriate in determining literal infringement.'" (Emphasis added).  In the instant case, the claims did not issue with a "substantially" qualification.  And importing the modifier "substantially" into the claim relative to the "oil" limitation affords a leeway (i.e., a broadened meaning) to the ordinary term "oil" that the patentee did not write into the claim during prosecution.  Thus, the Court's construction amounts to a rewrite of the claims to provide an expanded scope not present in the claim as written.  "Oil" and "substantially oil" have different scope.  The word "substantially" provides greater leeway than the term "oil" alone, as the Court's aforementioned acknowledgement of *Seattle Box* confirms.

The Court of Appeals for the Federal Circuit has consistently stated that courts may not redraft claims, whether to make them operable or to sustain their validity.  *See K-2 Corp. v. Salomon S.A.,* 191 F.3d 1356, 1364 (Fed. Cir. 1999) ("Courts do not rewrite claims; instead we give effect to the terms chosen by the patentee."); *see also Allen Eng'g Corp. v. Bartell Indus., Inc.,* 299 F.3d 1336, 1349 (Fed. Cir. 2002); *Elekta Instrument S.A. v. O.U.R. Scientific Int'l, Inc.,* 214 F.3d 1302, 1308-09 (Fed. Cir. 2000); *Process Control Corp. v. Hydreclaim Corp.,* 190 F.3d 1350, 1357 (Fed. Cir. 1999); *Rhine v. Casio, Inc.,* 183 F.3d 1342, 1345 (Fed. Cir. 1999); *Becton Dickinson & Co. v. C.R. Bard, Inc.,* 922 F.2d 792, 799 n.6 (Fed. Cir. 1990).  Even a "nonsensical result does not permit the court to redraft the claims of the ['290] patent.  Rather, whereas here, the claims are susceptible to only one reasonable interpretation and that interpretation results in a

32

nonsensical construction of the claim as a whole … we must construe the claims based on the patentee's version of the claim as he himself drafted it." *Process Control Corp.,* 190 F.3d at 1357.

In the instant case, the patentee chose to claim a method that results in the recovery of "oil." The patentee's choice of language did not equivocate as to the nature of the oil recovered, or include as part of the recovery anything other than oil. The use of the term "substantially" is a known claiming method to prevent exactness as to the claimed outcome. The patentee did not include such language in its claims. The specification confirms that a recovery of oil is intended to be a recovery of oil separate and apart of the other elements of concentrated thin stillage.

The disclosure of the '858 patent is incorporated by reference in the '037 patent. ('037 patent, Col. 5, lines 19-23). All relevant portions of the '858 patent disclosure indicate that oil recovered by the claimed process is not anything but what the plain language states: oil. In one portion of the disclosure, the method is said to comprise "recovering thin stillage <u>including oil and solids</u> from the whole stillage, concentrating the thin stillage <u>including the solids</u>, and recovering **oil** from the concentrate. ('858 patent, Col. 2, lines 58-61). Oil and solids were expressly listed as part of what was recovered when thin stillage was recovered from the whole stillage. But oil is listed as being recovered separately and apart from the remaining thin stillage. In other words, the patentee demonstrated that it could expressly list solids and oil as components of the recovered thin stillage, and the expressly limit recovery of one of those components - oil - as the product recovered from the concentrate. In another location of the specification the step of recovering oil is said to comprise "separating the **oil** from the concentrate using a centrifuge." (*Id.,* Col. 3, lines 1-2) (Emphasis added). In yet another location of the specification, the ability to recover oil distinct from solids is identified: "Under

33

[specified temperature, pH and moisture content] process conditions, the disk stack centrifuge is able to **separate the oil from the concentrate** in an efficient and effective manner, despite the relatively high level of solids present **(which may be recovered from the centrifuge in a continuous or intermittent fashion ….)**.  (*Id.,* Col. 4, lines 2-7) (Emphasis added).  This strongly demonstrates the patentees ability to describe that the solids are present in the concentrated thin stillage, but are not part of the oil, which the patentee describes as having been separated from the concentrate apart from the solids.  The last mention of oil recovery in the '858 patent specification involves the identification of other types of centrifuges that "may be especially beneficial when the moisture content of the concentrate is less than 50% by weight," e.g., a nozzle bowl disk stack centrifuge, a horizontal centrifugal decanter, "or other like devices for **separating oil** from a substance including suspended solids."  (*Id.,* Col. 5, lines 48-55) (Emphasis added).  Thus, the specification of the '858 patent speaks in terms of the oil being separated from the concentrate in the recovering process without any explanation or elaboration on the quality of the separation that occurs.  The normal meaning of "to separate" is "to set or keep apart," "to make a distinction between," "to isolate from a mixture."  (*See, e.g.,* "separate", Merriam-Webster Online Dictionary, http://www.merriam-webster.com/dictionary/separate).

The '858 patent claims that Figure 2 represents the inventive method. (CleanTech Exhibit 1, Master Doc. 499-1, '858 patent Col. 4, line 39).  Figure 2 of the '037 patent is identical to Figure 2 of the '858 patent.  Figure 2 consistent with the specification, demonstrates that oil recovery does not include the recovery of any solids or water.  The data represented in Figure 2 is based on actual experimental data.  (Master Doc. 350-1, Weyrauch Dec. Exhibit A, Provisional patent app. page 4, lines 16-17).  According to the disclosure in Figure 2, a volume of thin stillage having moisture content of 92% is processed through an evaporator for sufficient

10374702v2

time to remove enough water such that the resulting volume of syrup (concentrated thin stillage) has a moisture content of 80% (i.e., a 12% reduction in moisture content), and contains 566 pounds of oil. The syrup is then fed into a disk stack centrifuge at a rate of 35 gallons per minute to recover 538 pounds of oil from the volume of syrup processed. According to Figure 2 the oil separated by the centrifuge includes no solids and no moisture, and this oil is referred to as "usable" oil. ('858 patent, Col. 4, lines 49-50) ("At an infeed rate of approximately 35 gallons per minute, this centrifuge 14 recovers usable oil at a rate of 538 pounds per hour . . . ."). According to this disclosure in the '858 patent, the oil recovery process as disclosed in Figure 2 achieves the stated goal that the prior art could not achieve, namely, recovering oil efficiently and economically without any further processing.

The '037 patent, like the '858 patent discusses prior art processes that attempted to separate oil from thin stillage prior to the thin stillage having been processed through an evaporation process, and characterizes such prior art as not able to produce usable oil, but rather only able to create an undesirable emulsion phase that required further processing. This prior art process is criticized in both the '037 patent and the '858 patent as unsuccessful in terms of efficiency and economy. Both the '037 patent and the '858 patent state that a need exists for a more efficient and economical manner of recovering oil from a byproduct containing oil, naming thin stillage created during the dry milling ethanol process as one specific example. ('858 patent, Col. 2, lines 11-14).

The specification and the patentee's choice of claim language to require a "recovery"/"separation" of "oil" does not afford a deviation from the term "oil." The '037 patent does not provide guidance or support for the scope of oil recovery that meets the "substantially oil" standard established by the Court. *See Seattle Box Co. v. Indust. Crating & Packing, Inc.,*

35

10374702v2

731 F.2d 818, 826 (Fed. Cir. 1984) (When a word of degree is used in a claim, the district court must determine whether the patent's specification provides some standard for measuring that degree.). Even absent an express definition of a term in the specification or prosecution history, or a clearly established understanding of the meaning of the term in the art, the manner in which the term is used in the patent may dictate a definition that differs from the definition that would be given to the same term in a different patent with a different specification or prosecution history. *See Young Dental Mfg. Co. v. Q3 Special Prods., Inc.,* 112 F.3d 1137, 1143 (Fed. Cir. 1997) ("The specification that is relevant to claim construction is the specification of the patent in which the claims reside.").

In the instant case, the contours of "substantially oil" are not derivable from the specification. As a result, CleanTech has taken the liberty of reading the "substantially oil" limitation on a wide range of oil qualities represented by CleanTech's testing of all Defendants' product streams exiting the centrifuge. For example, in the case of Defendant Cardinal Ethanol, the oil exiting the centrifuge has a relatively large amount of contaminants in the oil stream. (Plaintiff's Mem. of Law, ¶ 81). Yet, CleanTech reads the term "substantially oil" to cover such a result.

The specification of the '858 patent cannot be read to support a deviation from the narrow term "oil" as used by patentee in the claims, to read on the type of recovery demonstrated by the oil leaving Cardinal Ethanol's centrifuge. In view of the absence of specific examples or data in the specification to support what oil separated from the thin stillage concentrate consists of, the degree of variance from 100% oil should if at all be very narrow, e.g., trace amounts of contaminants. Because the oil recovered by Cardinal Ethanol and Lincolnway Energy has a very large percentage of contaminants, summary judgment of infringement must not only be denied,

<div align="center">36</div>

but summary judgment of noninfringement is in order. The Court is asked to revisit the propriety of departing from the narrow claiming language used by patentee to so as to provide leeway to the oil recovery language that the patentee did not claim.

**F.      Claim 8 of the '037 patent is invalid under 35 U.S.C. 112(2) for lack of enablement.**

Neither the '733 provisional application nor the '150 application upon which the '037 patent claim priority contained any reference to "mechanically processing" when those applications were first filed with the U.S. Patent Office.  (SOF ¶ ¶ 1-5).  The term "mechanically processing" was added to the claim that ultimately became claim 8 during prosecution.  (SOF ¶ 5).  The disclosure on which the claims of the '037 patent is based involves Figure 5.  (SOF ¶ 28).  According to the '037 patent, only centrifugation, specifically disk stack centrifugation, is disclosed as the means for processing concentrated thin stillage to recover oil.  ('037 patent, Col. 7:12-17).  A patent specification must enable the full scope of the claimed invention.  *Sitrick v. Dreamworks, LLC,* 516 F.3d 993, 999 (Fed. Cir. 2008); *Liebel-Flarsheim Co. v. Medrad, Inc.,* 481 F.3d 1371, 1378-80 (Fed. Cir. 2007).  The failure to enable the claims to their full scope is grounds for summary judgment of invalidity.  *Sitrick,* 516 F.3d at 999; *Liebel*-Flarsheim, 481 F.3d at 1378-80.  Because the specification only discloses narrowly the use of centrifugation to recover oil, a claim to a broader method of oil recovery, e.g., "mechanically processing," as used in claim 8, is not supported by the specification.  Accordingly, claim 8 is invalid under 35 U.S.C. § 112(1) for lack of an enabling disclosure in the specification to support the breadth of the claimed method.

**G.      The Plaintiff has Failed to Show the '037 Defendants Practice the Claimed Method**

The focal points of the '037 patent involves three basic concepts: (1) the concept of separation of oil from concentrated thin stillage as shown in Figures 1-4 which are identical to

37

10374702v2

Figures 1-4 of the '858 patent; (2) the concept of washing the wet cake (distillers wet grains)[9] which process is shown in Figures 6-11; and (3) the concept of further reducing the moisture content of the de-oiled concentrated thin stillage stream by additional evaporation which is shown in Figure 5.

In prosecution, Plaintiff ultimately pursued the claims pertaining to the third concept - the further reduction of moisture in the de-oiled stream. It is these claims that are now before the Court.

In the specification, the inventor has unequivocally stated that the "primary benefit" of the invention is the recovery of corn oil. *See* '037 patent, Col. 7, lines 44-45. All other benefits of the invention are deemed by the inventor to be "ancillary". *See, e.g.,* '037 patent, Col. 7, lines 43-45.

The disclosure of the '858 patent discusses the concentration of thin stillage and the centrifugal separation of oil from the concentrated liquid stream. While the '858 patent does also disclose the further processing of the de-oiled stream whereby moisture is removed ('858 patent, Col. 5, lines 46-48 – "For example, the syrup recovered from the centrifuge may be evaporated and processed again in a further effort to recover oil before drying."), the '037 patent provides more details as to this proposed further processing. *See*, *e.g.*, '037 patent, Fig. 5.

Specifically, the '037 patent discloses that the centrifuge separating the oil from the concentrated thin stillage stream produces three separate process streams – an oil steam, a sludge (solids) stream, and a syrup stream. *See* '037 patent, Col. 7, lines 20-25 and Fig. 5. The disclosure goes on to define this de-oiled "syrup" stream as being subjected to further moisture

---

[9] The patent discloses the use of water or thin stillage passing over and through the distillers wet grains (wet cake) to wash oil droplets from the solids, thereby freeing additional oil from the solids stream for purpose of removal. *See, e.g.,* '037 patent, Col. 4, lines 4-11 and Figs. 6-11.

38

reduction "such as by using an evaporator" producing a "resulting concentrated stillage" stream which is thereafter piped to the dryer for purposes of inclusion in the DDGs. *See* '037 patent, Col. 7, lines 25-29. In sum, what is taught by the '037 patent is to separately treat the syrup stream, which is disclosed to be the heavy phase (primarily water) stream exiting from the centrifuge, for the purpose of subjecting it to further moisture reduction by evaporation or other processes prior to adding this syrup stream to the wet cake in the dryer to form the DDGs.

In securing the '037 patent from the USPTO, Winsness clearly defined the invention to require a unique type of concentrated thin stillage with a reduced amount of solids as the concentrated thin stillage that is further processed in the evaporator system. CleanTech admits that the claims of the '037 patent are directed solely to the invention disclosed relative to Figure 5. (SOF ¶ 28). The '037 patent describes the embodiment of Figure 5 by differentiating syrup obtained via the disk stack centrifuge 14 from prior references to syrup. According to Figure 5, the disk stack centrifuge 14 produces byproducts that include suspended solids or "sludge" and syrup. ('037 patent, Col. 7, lines 20-24). The specification then clearly defines that "this" syrup byproduct (i.e., a syrup byproduct with reduced suspended solids) may be further concentrated, such as by using an evaporator. (*Id.*, lines 24-26). The use of a centrifuge that removes suspended solids is touted as a strategic benefit because the suspended solids are "most responsible for fouling of the corresponding heat exchangers of the evaporator." (*Id.*, lines 49-52).

In point of fact, the '037 patent goes on to tell the USPTO and the public that in order to most benefit by this reduced solids content of the syrup stream exiting the centrifuge, it may be worth an additional monetary investment in equipment to increase evaporation capacity of the ethanol plant downstream from where the oil removing centrifuges are positioned ("In practice,

39

the evaporators 12 in many ethanol plants are 10 already "at capacity." In such cases, it may be necessary to add evaporator capacity **to maximize the benefit of removing the suspended solids using the separator, such as centrifuge**…" (emphasis added)).  '037 patent, Col. 7, lines 61-64.

The distinction as to the syrup produced after centrifugation for oil removal was also the specific subject of discussion between the inventors and the patent examiner.  In the Response to Office Action dated November 30, 2010, the inventors distinguished claims 3 and 4 in light of an indefiniteness rejection under 35 U.S.C. § 112.  Therein, it was stated:

> Claim 4 is not at odds with claim 3. **<u>The disk stack centrifuge is used to separate suspended solids from the syrup.</u>** Thus, the disk stack centrifuge can be used to produce suspended solids and syrup without the suspended solids. Claim 3 relates to production of suspended solids whereas claim 4 relates to production of a syrup.  The language in claims 3 and 4 are clear and definite. *11-30-'10 Response to Office Action, p. 5.*

The Court has entered a claims construction ruling wherein the following is stated:

| | |
|---|---|
| subsequently evaporating the thin stillage concentrate in an evaporator to further reduce a moisture content and form an evaporated thin stillage concentrate/subsequently evaporating the thin stillage concentrate to further reduce the moisture content of the thin stillage concentrate and form an evaporated thin stillage concentrate/evaporating the thin stillage concentrate to further reduce a moisture content of the thin stillage concentrate and form an evaporated thin stillage concentrate/evaporating the concentrated thin stillage to reduce a moisture content and form an evaporated thin stillage concentrate prior to mixing with distillers wet grains | To subject the post-oil recovery thin stillage concentrate to further or additional evaporation |

40

In the recent case of *Thorner v. Sony Computer Entertainment America, LLC*, 669 F.3d 1362 (Fed. Cir. 2012), the Court of Appeals for the Federal Circuit reiterated the restriction on importing limitations from the specification, stating that "[t]here are **only two** exceptions to this general rule:  1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution."  *Thorner*, 669 at 1365 (Fed. Cir. 2012) (emphasis added).  Both exceptions require **a clear and explicit statement** by the patentee.  *Id*. at 1368 (emphasis added).

To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term.  *Id.* at 1365 (citing *CCS Fitness, Inc. v. Brunswick Corp*., 288 F.3d 1359, 1366 (Fed. Cir. 2002)).  It is not enough for a patentee to simply disclose a single embodiment or use a word in the same manner in all embodiments, the patentee must "clearly express an intent" to redefine the term.  *Id*. (citing *Helmsderfer v. Bobrick Washroom Equip., Inc*., 527 F.3d 1379, 1381 (Fed. Cir. 2008)).

In review of the specific disclosures of the '037 patent and the touted benefits associated with the removal of suspended solids to form a syrup with a reduced solids level that is to be further evaporated, Defendants submit that the term "post oil recovery thin stillage concentrate" that is further evaporated has been explicitly defined by CleanTech to constitute "a syrup containing water, oil and solids resulting from the concentrating or evaporating process and a suspended solids removal process."  Defendants request that the Court refine the construction of thin stillage concentrate that is further evaporated accordingly.  This further definition is specific to the disclosure of the '037 patent, and fully represents the claimed inventive concept regarding the further reduction of moisture in the post-oil recovery stream.  In view of this refined

41

definition of concentrated thin stillage, CleanTech is further not entitled to summary judgment of infringement as this proper definition is applicable to all claims of the '037 patent.

Plaintiff does not have and cannot offer proof of infringement related to the further processing of a concentrated thin stillage stream syrup with reduced solids following centrifugation for oil removal and sludge removal.  Specifically, Plaintiff has not submitted discovery, and its plant inspections failed to produce evidence whereby it can show that any of the accused Defendants are receiving "the benefit of removing the suspended solids using the separator, such as centrifuge."  *See* '037 patent, Col. 7, lines 61-64. Accordingly, none of the asserted claims of the '037 patent are infringed by the any of the '037 Defendants as a matter of law.

## CONCLUSION

For the reasons set forth above, the '037 Defendants respectfully request the Court to enter summary judgment of invalidity and noninfringement of the '037 patent.


Respectfully submitted,

Dated:  December 31, 2013

By:  s/Ruth Rivard
Donald T. Campbell (MN #262171)
Ruth Rivard (MN #327591)
LEONARD, STREET AND DEINARD
  Professional Association
150 South Fifth Street, Suite 2300
Phone: 612-335-1799
Fax:  612-335-1657
donald.campbell@leonard.com
ruth.rivard@leonard.com

COUNSEL FOR BLUE FLINT ETHANOL LLC

By:  s/John M. Weyrauch (signed and filed with permission)
John M. Weyrauch (MN221,879)
Paul P. Kempf (MN239,215)
100 South Fifth Street, Suite 2250

42

10374702v2

Minneapolis, MN 55402
Telephone: (612) 767-2511
Facsimile: (612) 573-2005
jmweyrauch@dbclaw.com
pkempf@dbclaw.com

ATTORNEYS FOR DEFENDANTS ICM, INC., DAVID VANDERGRIND, FLOTTWEG SEPARATION TECHNOLOGY, INC., CARDINAL ETHANOL, LLC, BIG RIVER RESOURCES GALVA, LLC, BIG RIVER RESOURCES WEST BURLINGTON, LLC AND LINCOLNLAND AGRI-ENERGY, LLC


By: s/Glenn Johnson (signed and filed with permission)
Glenn Johnson
Sarah J. Gayer
NYEMASTER, GOODE, WEST, HANSELL & O'BRIEN, PC
625 First Street, SE, Ste. 400
Cedar Rapids, IA 52401
Phone:  319-286-7000
Fax:  319-286-7050
gjohnson@nyemaster.com
sjgayer@nyemaster.com

COUNSEL FOR LINCOLNWAY ENERGY, LLC

43

10374702v2

CERTIFICATE OF SERVICE


I, Ruth Rivard, hereby certify that on December 31, 2013, a true and correct copy of the MEMORANDUM IN SUPPORT OF DEFENDANTS LINCOLNWAY ENERGY, LLC, LINCOLNLAND AGRI-ENERGY, LLC, ICM, INC., DAVID VANDERGRIND, FLOTTWEG SEPARATION TECHNOLOGY, INC., CARDINAL ETHANOL, LLC, BLUE FLINT ETHANOL LLC, BIG RIVER RESOURCES WEST BURLINGTON, LLC AND BIG RIVER RESOURCES GALVA, LLC JOINT MOTION FOR SUMMARY JUDGMENT OF INVALIDITY AND NONINFRINGEMENT OF U.S. PATENT NO. 8,168,037 AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT was filed electronically with the Court. Service of this filing will be made on all ECF-registered counsel by operation of the court's electronic filing system. Parties may access this filing through the court's system.


<div style="margin-left:40%">

s/ Ruth Rivard
Ruth Rivard

</div>

44

10374702v2