UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE: METHOD FOR PROCESSING )
ETHANOL BYPRODUCTS AND RELATED )
SUBSYSTEMS PATENT LITIGATION ) Master Dkt. 1:10-ml-2181-LJM-DML
)
THIS ORDER RELATES TO: )
ALL CASES )

# Order on Motion to Compel Discovery of
## Attorney-Client Communications

Defendant Iroquois Bio-Energy Company, LLC has moved to compel the production of documents withheld by CleanTech or the inventors as attorney-client privileged communications. (Master Dkt. 1394).[1] The communications include those between inventors Cantrell or Winsness with their original patent prosecution counsel (Mr. Dorisio) and communications between the inventors or principals of CleanTech with lawyers at the Cantor Colburn law firm. Iroquois's motion contends that the crime-fraud exception applies and vitiates the privilege.

The court has addressed the parties' arguments regarding the crime-fraud exception previously, primarily in connection with its order on CleanTech's motion to quash a deposition subpoena served on Cantor Colburn lawyer Charles O'Brien. (*See* Order of June 30, 2014, Master Dkt. 1241.) In that order, the court discussed the contours of the crime-fraud exception as well as the waiver and work product principles implicated by that motion. The court concluded in that order that the

---

[1] The court GRANTS CleanTech's motion (Master Dkt. 1430) to submit a surreply. The court reviewed and considered the surreply filed at Master Dkt. 1431.

defendants had provided at that time an insufficient evidentiary foundation to apply the crime-fraud exception.

## Analysis

At the outset of its analysis of the current motion, the court will address the overarching theme of CleanTech's opposition to the motion: that there have been no new developments since last year's order and the court should therefore, necessarily, rule again that there is an insufficient evidentiary foundation to pierce the attorney-client privilege based on the crime-fraud exception. CleanTech's characterization of the state of the record and of the factual mosaic underlying Iroquois's current motion is simply wrong. First, there have been new developments since that order (and there may be new developments to come). Since that order, certain computer forensics work has been done. Mr. Cantrell and Mr. Winsness have been deposed again. Expert forensic analysis of key documents has been performed, and expert reports have been served. The court has issued its summary judgment order, which includes findings and conclusions that may ultimately be germane to the inequitable conduct (and hence, crime-fraud) issue. Information regarding Mr. Cantrell's, Mr. Winsness's, and other witnesses' financial stake in the patents has become known. Second, Mr. Dorisio and Mr. Hagerty will be deposed a second time regarding PTO prosecution matters. Third, the court observed in its 2014 order that defendants' prior briefing in support of the crime-fraud exception was too generalized to support a ruling that the attorney-client privilege should be pierced. The current motion, on the other hand, is supported by

a lengthy, detailed citation of facts and inferences Iroquois asserts are reasonably drawn from those facts. Although, as explained below, the court will not now adopt those facts and inferences as findings, no reasonable reading of them could lead to the conclusion that they are too general.

But the fact that Iroquois can articulate a plausible predicate for application of the crime-fraud exception does not end the inquiries this court must make. Most important, the court must consider the appropriate level of proof necessary to vitiate the privilege, the proper manner in which the court should determine the factual disputes that underlie the assertion of the exception, and the best juncture in the case for deciding whether the crime-fraud exception applies. To these issues the parties have given scant attention in the briefing. And to decide them, the court must balance the important policies served by both the attorney-client privilege and its crime-fraud exception. Significantly, the Seventh Circuit has made clear that the questions about *how* to determine whether the crime-fraud exception applies, such as whether to do so in the context of an adversarial hearing, are left to the district court's discretion. *United States v. Boender,* 649 F.3d 650, 657-58 (7th Cir. 2011).

Iroquois cites cases for the proposition that it need make only a "prima facie" showing of a crime or fraud, described as "evidence that gives color to the charge by showing some foundations in fact" and which is "enough to require explanation" by the adverse party why the privilege should remain intact. *E.g., United States v. Pons,* 2013 WL 1093107 at *4 and 6 (N.D. Ill. March 15, 2013) (quoting *United*

*States v. Boender,* 649 F.3d at 655, *United States v. BDO Seidman, LLP,* 492 F.3d 806, 815 (7th Cir. 2007), and *Matter of Feldberg,* 862 F.2d 622, 625 (7th Cir. 1988)). *See also Clark v. United States,* 289 U.S. 1, 16 (1933) (analogizing loss of juror deliberation privilege to crime-fraud exception to attorney-client privilege, stating: "A privilege surviving until the relation is abused and vanishing when abuse is shown to the satisfaction of the judge has been found to be a workable technique for the protection of the confidences of client and attorney.")

As courts have recognized, however, the "prima facie" standard is elusive, confusing, and misleading in the crime-fraud context. *See, e.g.*, *In re Napster, Inc. Copyright Litigation*, 479 F.3d 1078, 1091-96 (9th Cir. 2007), *abrogated on other grounds*, 558 U.S. 100 (2009) (in the non-grand jury context, "prima facie" for purposes of the crime-fraud exception means demonstrated by a preponderance of the evidence).

The questions of the nature and quality of the proof and of how to address underlying factual disputes and the inferences that ought to be drawn from those facts are particularly acute here. None of the cases cited by Iroquois (or CleanTech, for that matter) involves the unique circumstances presented by this case. Here, the very same conduct, evidence, and inferences on which Iroquois relies to make its case for application of the crime-fraud exception are the foundation of the defendants' inequitable conduct defense for which they seek to compel discovery based on the crime-fraud exception. That distinction between the cited authorities and this case is critical. Iroquois's motion attempts to demonstrate in discovery

4

briefing the very abuse that must be "shown to the satisfaction of the judge" at the inequitable conduct trial. *Clark v. United States,* 289 U.S. 1, 16 (1933).

The magistrate judge will not conduct what would amount to an inequitable conduct trial on the papers in the context of this discovery motion. The inequitable conduct trial itself will permit the airing of the evidence cited by Iroquois, along with the court's evaluation of the credibility of witnesses, which may be an important component in the court's evaluation of the evidence. The persuasive value or strength (or lack thereof) of certain of the evidence identified by the defendants as indicative of fraud, including the intent element, may depend in large part on a fact-finder's evaluation of the credibility of witnesses. For example, one of the defendants' inequitable conduct theories is that inventor Cantrell executed an affidavit he knew to be false and would be (and was) filed with the PTO.[2] Some evidence underlying that theory includes analysis of letters signed in ink by Mr. Cantrell and apparent changes in letterhead logos, for which there is dueling expert testimony to be evaluated. The theory also depends, in part, on the believability of testimony to be offered by or elicited from Mr. Cantrell and Mr. Winsness

---

[2] As the court understands it, the defendants' inequitable conduct theories are two-fold. One rests on the alleged false affidavit itself, as well as the steps that were and were not taken in an attempt to correct the affidavit. The second theory does not necessarily depend on a finding that the first Cantrell affidavit was knowingly false but more broadly relates to a mosaic of circumstances the defendants contend will prove that CleanTech and/or the inventors engaged in a course of action to conceal material information and its import, including by failing to disclose the Barlage testing and its results, by failing to provide a fair roadmap of material information to the PTO, and by making disclosures in a manner and at a time with a design to obfuscate and prevent fair disclosure of material information.

5

surrounding their contacts with Agri-Energy, their failures (and the failure of others such as Mr. Lauderbaugh) to produce the August 1 email, Mr. Cantrell's initial refusal to answer questions regarding the email and his "flight" response to the defendants' possession of the email, the inventors' 2003/2004 statements recorded on documents or in communications with investors that the invention had been discovered in June 2003, and the inventors' later position that the June 2003 testing was a "failure."

The Seventh Circuit approved, in one case, the district court's conduct of an adversarial hearing to determine whether it was satisfied with the quantum and quality of evidence that an attorney-client relationship had been abused in furtherance of a fraud before piercing the privilege. That was an appropriate means to protect against the risk of compromising legitimate privileged attorney-client communications. *See Boender,* 649 F.3d 650.[3]

The obvious other side of the court's balancing of a proper remedy or procedure is the desire of the defendants to obtain in advance of trial evidence they believe will be relevant to their inequitable conduct defense, particularly under the heightened *Therasense* standard. The court makes several observations in that regard.

---

[3] In light of the substantial identity of the crime-fraud and inequitable conduct issues, it likely is most reasonable here that the "adversarial hearing" be part of the trial itself.

6

First, the defendants have developed a significant body of evidence already on which they rely to advance the crime-fraud exception and the inequitable conduct defense.[4]

Second, the court must consider the consequences of an incorrect decision to apply the crime-fraud exception before full airing of the existing evidence. The compelled disclosure of otherwise privileged communications cannot be undone, but the defendants' problem of not having every piece of evidence they would like to have before trial or some other evidentiary hearing can be ameliorated.

Third, Iroquois has overstated its disadvantage; it has not been left without access to critical evidence. A number of the matters it maintains it has been unfairly prevented from discovering are not matters to which the privilege applies anyway. These include: (1) the fee agreement and arrangement between CleanTech and its counsel (*see* Order on Motion to Reconsider Ruling on Financial Discovery, Master Dkt. 1465); (2) the reason(s) why the inventors discontinued their retention of attorney Dorisio[5]; and (3) attorney Hagerty's thought-processes, evaluation of information, and decision-making in connection with his patent prosecution work (including, for example, why he emphasized at all the lack of a

---

[4] The parties should not interpret this order as a commentary on the strength of the defendants' proof under *Therasense*. There is no such intent.

[5] The attorney-client privilege, as a bar to evidence, applies only to confidential communications for the purpose of securing or providing legal advice. *E.g., In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800, 805 (Fed. Cir. 2000). The court cannot conceive how a communication merely terminating the attorney-client relationship can be characterized as one by the client to obtain legal advice.

signature on the August 1 email document and other decision-making involved with the second Cantrell affidavit, and why his emphasis on the May 2004 testing "strengthened the patent"). This list is not necessarily exhaustive. The point is that the court has permitted inquiry into patent prosecution matters that CleanTech previously objected to on work product grounds, and the attorney-client privilege is limited to confidential communications made for the purpose of securing or providing legal advice. Not all communications with one's lawyer fit that description, and the court has previously made that clear.

Finally, as addressed by the court in its June 30, 2014 Supplemental Order, waiver principles may also be implicated before or during the inequitable conduct trial. *See* Master Dkt. 1241 at pp. 4-5, including, *e.g., In re Seagate Technology, LLC,* 497 F.3d 1360, 1372 (Fed. Cir. 2007) (litigant may not use his privilege as both a sword (by disclosing only those communications he believes provides an advantage) and a shield (by refusing to disclose communications that may be unfavorable or that should be disclosed for a fair analysis of that which was disclosed)); *In re Rhone-Poulenc Rorer, Inc.,* 1998 WL 968489 at *2 (Fed. Cir. 1998) (unpublished) (implied waiver occurs where litigant asserts a claim "that in fairness requires examination of protected communications"). In its earlier order, the court found that the sort of testimony defendants elicited from CleanTech did not impliedly waive the privilege, but that is different from evidence or argument that CleanTech itself advances in order to obtain an advantage. Asserting advice of counsel, or emphasizing the defendants' lack of evidence on a particular issue—

when that evidence by definition would reside solely in attorney-client communications—may implicate waiver principles.[6]

In summary, the court requires that the factual predicate for the crime-fraud exception be determined in an adversarial proceeding—most likely during the inequitable conduct trial itself given the near identity of the issues. The court will thus require appropriate pretrial measures to ensure as best as possible that documents withheld on attorney-client privilege grounds are in admissible form at trial should the privilege give way because of either the crime-fraud exception or express or implied waiver. Except for relevance or a privilege objection, CleanTech must be prepared to stipulate to the foundational elements of documents that have been withheld as attorney-client privileged communications, including documents appearing on attorney Dorisio's privilege log.

## **Conclusion**

For the foregoing reasons, Iroquois's motion to compel (Master Dkt. 1394) based on the crime-fraud exception to the attorney-client privilege is DENIED WITHOUT PREJUDICE.

So ORDERED.

Dated: May 15, 2015

Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana

---

[6] This order also does not purport to evaluate waiver, an issue addressed in one of Iroquois's cases, but which is not a basis for the relief sought by Iroquois. In *In re Sealed Case,* 676 F.2d 793, 825 (D.C. Cir. 1982) (with two judges of the three-judge panel agreeing that as to two documents, there was an implied waiver of privilege).

Distribution:

All ECF-registered counsel of record by email through the court's ECF system