UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| IN RE: METHOD OF PROCESSING ) | |
| ETHANOL BYPRODUCTS AND ) | CASE NO. 1:10-ML-2181 RLM-DML |
| RELATED SUBSYSTEMS ('858) ) | |
| PATENT LITIGATION ) | |

_This Document Relates to_:                )
                                           )
1:10-cv-0180-RLM-DML                        )
1:10-cv-8000-RLM-DML                        )
1:10-cv-8001-RLM-DML                        )
1:10-cv-8002-RLM-DML                        )
1:10-cv-8003-RLM-DML                        )
1:10-cv-8004-RLM-DML                        )
1:10-cv-8005-RLM-DML                        )
1:10-cv-8006-RLM-DML                        )
1:10-cv-8007-RLM-DML                        )
1:10-cv-8008-RLM-DML                        )
1:10-cv-8009-RLM-DML                        )
1:10-cv-8010-RLM-DML                        )
1:13-cv-8012-RLM-DML                        )
1:13-cv-8013-RLM-DML                        )
1:13-cv-8014-RLM-DML                        )
1:13-cv-8015-RLM-DML                        )
1:13-cv-8016-RLM-DML                        )
1:13-cv-8017-RKM-DML                        )
1:13-cv-8018-RLM-DML                        )
1:14-cv-8019-RLM-DML                        )
1:14-cv-8020-RLM-DML                        )

## OPINION AND ORDER

The defendants' motions for attorneys' fees and expenses and their joint

motion to strike the affidavit of the plaintiff's expert, David McMahon, are before

the court. For the reasons that follow, the court grants the motion to strike and grants the motions for fees in part.

As a preliminary but necessary matter, the court apologizes to the parties for the length of time it has taken to resolve these motions. The original transferee judge, Larry McKinney, did nearly all the heavy lifting in this case, and then passed. The successor judge had a lot of catching up to do. Recognizing the magnitude of the record to be reviewed, the court appointed a special master to recommend resolution of the motions, but health problems during the pandemic kept him from accomplishing his task, so court took matters back into chambers. At long last, the court rules.

## I. STANDARD OF REVIEW

"[A] district court may award fees in the rare case in which a party's unreasonable conduct – while not necessarily independently sanctionable – is nevertheless so 'exceptional' as to justify an award of fees." Octane Fitness, LLC v. Icon Health & Fitness, Inc., 572 U.S. 545, 555 (2014); Kilopass Techy., Inc. v. Sidense Corp., 738 F.3d 1302, 1313 (Fed. Cir. 2013) ("[T]he aim of 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur."). A prevailing party that obtains "excellent results . . . should recover a fully compensatory fee" that normally "will encompass all hours reasonably

2

expended on the litigation." Hensley v. Eckerhart, 461 U.S. 424, 435 (1983); Mathis v. Spears, 857 F.2d 749, 755 (Fed. Cir. 1988).

Hensley sets the standard for determining whether a fee request is reasonable, and provides that "[t]he most useful starting point is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," commonly known as the lodestar. Id. at 433; see also Divane v. Krull Elec. Co., 319 F.3d 307, 317 (7th Cir. 2003); Spegon v. Cath. Bishop of Chi., 175 F.3d 544, 550 (7th Cir. 1999); Eli Lilly & Co. v. Zenith Goldline Pharms., Inc., 264 F. Supp. 2d 573 (S.D. Ind. 2003) (standard method for determining reasonable attorney fees in "exceptional" patent cases is the "lodestar" method). A lodestar containing reasonable hours and reasonable hourly rates is presumptively, but not irrebuttably, reasonable. See Hensley v. Eckerhart, 461 U.S. at 433–434.

"The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." Spegon v. Cath. Bishop of Chi., 175 F.3d at 550 (citing Hensley v. Eckerhart, 461 U.S. at 433). If the hours were not reasonably expended, or the documentation of hours is inadequate, the court must exclude them from its fee calculation. Hensley v. Eckerhart, 461 U.S. at 434; Spegon v. Cath. Bishop of Chi., 175 F.3d at 550. The court may adjust the modified lodestar based on a "variety of factors, the most

important of which is the 'degree of success obtained.'" Spegon v. Cath. Bishop of Chi., 175 F.3d at 550 (citing Hensley v. Eckerhart, 461 U.S. at 434–436).

A reasonable hourly rate is derived from the "market rate" for the services rendered. Montanez v. Simon, 755 F.3d 547, 553 (7th Cir. 2014); Spegon v. Cath. Bishop of Chi., 175 F.3d at 554; People Who Care v. Rockford Bd. of Educ., 90 F.3d 1307, 1310 (7th Cir. 1996). The "market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the type of work in question." Spegon v. Cath. Bishop of Chi., 175 F.3d at 555 (citations omitted). "The attorney's actual billing rate for comparable work is 'presumptively appropriate' to use as the market rate." People Who Care v. Rockford Bd. of Educ., 90 F.3d at 1310. So too, evidence that clients paid the fees that were billed is sufficient to show reasonableness. Cintas Corp. v. Perry, 517 F.3d 459, 469 (7th Cir. 2008) ("[T]he best evidence of whether attorney's fees are reasonable is whether a party has paid them."); In re Synthroid Mktg. Litig., 264 F.3d 712, 722 (7th Cir. 2001) ("If counsel submit bills with the level of detail that paying clients find satisfactory, a federal court should not require more."); Balcor Real Estate Holdings, Inc. v. Walentas-Phoenix Corp., 73 F.3d 150, 153 (7th Cir. 1996) ("[T]he best evidence of the market value of legal services is what people pay for it. Indeed, this is not 'evidence' about market value; it is market value.").

4

"[O]nce the attorney provides evidence of the market rate, the burden shifts to the opposing party to show why a lower rate should be awarded." <u>Vega v. Chi. Park Dist.</u>, 12 F.4th 696, 705 (7th Cir. 2021) (quoting <u>Stark v. PPM Am. Inc.</u>, 354 F.3d 666, 675 (7th Cir. 2004)).

## II.   BACKGROUND

The facts in this case were set out in great detail in <u>GS Cleantech Corp v. Adkins Energy LLC</u>, 951 F.3d 1310, 1316–1324 (Fed. Cir. 2020), and only a skeletal recounting is needed for today's purposes. Between 2009 and 2014, GS CleanTech Corporation filed suit against a number of defendants in various states alleging that they violated its patented method for extracting corn oil from ethanol byproducts. In 2010, The Judicial Panel on Multi-District Litigation consolidated the cases in the Southern District of Indiana for pretrial proceedings in MDL No. 2181, Cause No. 1:10-ML-2181, which culminated in an overwhelming victory for the defendants, who prevailed on summary judgment, when Judge McKinney invalidated CleanTech's patents and ruled them unenforceable, <u>In re Method of Processing Ethanol Byproducts & Related Subsytems ('858') Patent Litig.</u>, 303 F. Supp. 3d 791 (S.D. Ind. 2014), at trial on their inequitable conduct claim. <u>In re Method of Processing Ethanol Byproducts & Related Substems ('858') Patent Litig.</u>, No. 1:10-ml-2181 LJM-DML, 2016 WL 4919980 (S.D. Ind. Sep. 15, 2016). The ruling was affirmed on appeal, <u>GS CleanTech Corp. v. Adkins Energy LLC</u>, 951 F.3d

1310 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 1377 (2021), and enforced on on the motion for an exceptional case declaration and award of fees under 35 U.S.C. § 285 [Doc. No. 1908]. The amount of that award remains to be determined.

Fifteen law firms and more than 200 attorneys, paralegals, technical assistants, and support staff provided services to the defendants over the protracted course of this litigation. The defendants seek in excess of $16 million for those services, related non-taxable expenses, and the expert fees they incurred between 2010 and January 30, 2018, as well as prejudgment interest. They also seek leave to file supplemental motions for fees incurred on appeal. This is a summary of what they have asked for[1]:

| Defendant | Counsel of Record | Amts Requested |
|---|---|---|
| GEA Mechanical Equipment US and Ace Ethanol, LLC [Doc. No. 1792] (Binder No. 4) | Patterson Belknapp Webb & Tyler LLP (New York) | Attys Fees: $3,753,548.32<br>Expenses:   150,561.20<br>Experts:    160,627.06<br><br>TOTAL:   $4,064,736.58 |
| ICM and its customers [Doc. Nos. 1759 and 1760-1] (Binder No. 5) | Dicke, Billig & Czaja (Minneapolis, MN) Patterson Belknapp (New York, NY) | Attys Fees: $3,186,945.21<br>Expenses:   144,739.14<br>Experts: 176,034.56<br><br>TOTAL:   $3,507,718.91 |

[1] The attorney fees have been adjusted to reflect credits for the Cantor Colburn settlement.

| | Fleeson, Gooing, Coulson & Kitch (Wichita, KS) | |
| | Baker & Daniels (Indianapolis, IN) (Chicago, IL) | |
| | Cozen O'Connor (New York, NY) | |
| | Brian Burris/Hinkle Law Firm | |
| | Schwegman, Lundberg, Woessner, P.A. (Minneapolis, MN) | |
| | Woodard Emhardt (Indianapolis, IN) | |
| Bushmills Ethanol<br><br>Chippewa Valley Ethanol Co.<br><br>Heartland Corn Products<br><br>United Wisconsin Grain Producers<br><br>[Doc. No. 1786-1] | Michael Best & Friedrich (Madison, WI) | Attys Fees: $2,669,311.26[2]<br>Expenses:          73,223.11<br>Experts: 98,214.83<br><br>TOTAL:       $2,840,749.20 |

---

[2] The attorneys' fees Chippewa Valley and Heartland requested in their motion [Doc. No. 1786-1] differ significantly from the amounts identified in attorney Michael Best's supporting affidavit [Doc. No. 1781-2 at pp. 9 and 11–12], and include "unbilled" and undocumented fees for services provided after January 31, 2018.  Those discrepancies are addressed later in this opinion.

| | | |
|---|---|---|
| (Binder No. 9) | | |
| Iroquois Bio-Energy<br><br>[Doc. No. 1777-1]<br>(Binder No. 6) | Woodard, Emhardt,<br>Moriarty, McNett & Henry<br>(Indianapolis, IN) | Attys Fees: $1,375,400.50<br>Expenses:          52,695.71<br>Experts:<br>20,957.10<br><br>TOTAL:      $ 1,449,053.31 |
| Blue Flint Ethanol<br><br>[Doc. No. 1789]<br>(Binder No. 3) | Stinson Leonard Street,<br>LLP (Minneapolis, MN) | Attys Fees: $    899,413.57<br>Jt Def Fund:    50,000.00<br>Expenses:         69,913.06<br>Experts:<br>23,137.39<br><br>TOTAL:        $1,042,464.02 |
| Al-Corn Clean Fuel<br><br>[Doc. No. 1746-1]<br>(Binder No. 2) | Stoel Rives LLP<br>(Minneapolis, MN) | Attys Fees: $   755,803.55<br>Jt Def Fund:    50,000.00<br>Expenses:        26,137.32<br>Experts:         170,555.94<br><br>TOTAL:       $1,002,496.81[3] |
| Lincolnway Energy<br><br>[Doc. No. 1787]<br>(Binder No. 7) | Nyemaster Goode, PC<br>(Iowa) | Attys Fees: $   938,996.84<br>Expenses:         30,802.41<br>Experts:<br>30,007.65<br><br>TOTAL:      $  999,806.90 |
| Aemetis and<br>Aemetis Advanced<br>Fuels Keyes | Brown, Winick, Graves,<br>Gross, Baskerville &<br>Schoenebaum | Attys Fees: $   399,941.69<br>Expenses:<br>-0-<br>Experts: |

---

[3] Al-Corn's motion contained a mathematical error. The total amount requested should have been $1,002,496.81, not $1,003,496.81.

| | | |
|---|---|---|
| [Doc. No. 1765-1]<br>(Binder No. 8) | (Des Moines, Iowa) | -0-<br><br>TOTAL:        $  399,941.69 |
| Homeland Energy<br>Solutions<br><br>[Doc. No. 1771-1]<br>(Binder No. 8) | Brown, Winick, Graves,<br>Gross, Baskerville &<br>Schoenebaum | Attys Fees: $  246,598.75<br>Expenses:<br>-0-<br>Experts:<br>-0-<br><br>TOTAL:        $  246,598.75 |
| Pacific Ethanol LLC<br><br>[Doc. No. 1774-1]<br>(Binder No. 8) | Brown, Winick, Graves,<br>Gross, Baskerville &<br>Schoenebaum | Attys Fees: $    400,720.66<br>Expenses:<br>-0-<br>Experts:<br>-0-<br><br>TOTAL:        $  400,720.66 |
| Pacific Ethanol<br>Stockton<br><br>[Doc. No. 1768-1]<br>(Binder No. 8) | Brown, Winick, Graves,<br>Gross, Baskerville &<br>Schoenebaum | Attys Fees: $  245,983.45<br>Expenses:<br>-0-<br>Experts:<br>-0-<br><br>TOTAL:        $  245,983.45 |
| Flottweg Separation<br>Technologies<br><br>[Doc. No. 1762]<br>(Binder No. 5) | Wood, Herron & Evans LLP<br>(Cincinnati, OH) | Attys Fees: $      70,052.50<br>Expenses:            1,654.87<br>Experts:<br>-0-<br><br>TOTAL:        $      71,707.37 |
| TOTAL | | $16,271,977.60 |

9

The moving defendants submitted affidavits attesting to the complexity of the litigation and their potential exposure (which ranged from an estimated $12 million to well in excess of $25 million for each defendant); verifying that they had reviewed and paid the invoices submitted for the services provided; providing biographical information for the primary billers, the rates and hours billed by the law firms that represented them, and economic surveys by the American Intellectual Property Law Association (AIPLA); showing the rates charged by similar individuals doing similar work in their communities and/or geographic regions, and the national median cost of defending a single patent infringement claim from 2009–2017 (which ranged from $2 million to $3.325 million when damages were between $10 million and $25 million, and from $3 million to $5.5 million when damages exceeded $25 million, as they potentially did in GEA's case). The defendants provided invoices and billing summaries from their various law firms covering more than nine years of services in support of their motions.

CleanTech responds that the requested rates, hours, and expenses are excessive, unreasonable, unnecessary, and/or insufficiently documented, and asks the court to deny the defendants' motions in their entirety or, alternatively, to reduce the total amount awarded to $4,378,513.62 (a 73 percent reduction).[4]

---

[4] Clean Tech also argued that an award of fees isn't mandatory under 35 U.S.C. § 285, J.P. Stevens Co. v. LexTex, Ltd., 822 F.2d 1047, 1052 (Fed. Cir. 1987), and that it would be "grossly unjust" and an "undeserved windfall" to award fees to the defendants

CleanTech cites the expert declaration of attorney David J. McMahon, [Doc. No. 1863-1], Exhibits A–E attached thereto, [Doc. Nos. 1983-2 through 1983-6], and a supplemental affidavit regarding Mr. McMahon's experience [Doc. No. 1902].

Mr. McMahon attests in his supplemental affidavit that Clean Tech paid him $500.00 an hour to provide an independent evaluation of the defendants' requested fees and costs, at a total cost of $54,825.00. His analysis of the defendants' fee petitions and supporting documentation is contained in a 123-page declaration and a number of charts summarizing his findings and conclusions. (Exhibits A–E). More than half of Mr. McMahon's declaration is devoted to a restatement of the facts contained in Judge McKinney's September 15, 2016 opinion and order and an analysis of the law governing attorneys' fees. Mr. McMahon voiced "concerns" about many things throughout his affidavit, speculating that the cases might have been overstaffed and that there might have been duplication of efforts and mismanagement, but it was difficult to nail down exactly what his expert opinions were and the parties' briefs provided little guidance. Briefly summarized, Mr. McMahon opined that:

---

because there's no evidence it engaged in improper tactics or acted in bad faith. *See* Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc., 389 F.3d 1370, 1379 (Fed. Cir. 2004). The record demonstrates otherwise.

(1) "[M]ost standard billing guidelines utilized by corporations, insurance companies and sophisticated consumers of legal service provide rules concerning these topics:

- **Staffing of Cases** – Unless prior approval is obtained, hearings and depositions should be limited to one attorney. Cases should be staffed in a cost-effective manner.

- **Written Budgets** – Budgets should be prepared so the company can monitor and manage legal fees and exposure.

- **Vague Billing** – Each billing entry should provide a sufficiently detailed billing description so that the specific nature of the legal service provided can be clearly understood. Overly generalized and vague billing entries are typically not paid.

- **Overhead and Computer Research Costs** – Costs like this are determined to be overhead and most clients won't pay them.

- **Clerical Work** – Companies won't pay for either attorney or paralegal services that are clerical in nature such as file organization or Bates stamping.

- **No Block Billing** – A full description of *each* item of services provided should be provided including the timekeeper's name, the date performed and the *time spent* on that service (recorded in *one-tenth hour* increments).

- **Minimum Billing Increments** – Time should be recorded in one-tenth of an hour increments. Billing in .25 increments is an outdated and unacceptable billing technique."

(2) There's "little evidence" that the defendant had billing guidelines in place, provided guidelines to counsel, and reviewed and paid the law firms' invoices.

(3)  The rates of several of the non-Indiana lawyers should be reduced because they're significantly higher than rates charged by Indiana lawyers with comparable experience, performing similar services, and therefore excessive and unreasonable.

(4) The defendants' lawyers used "unreasonable billing practices" that inflated their bills and made it difficult to determine the reasonableness and necessity of the tasks performed, including billing for individuals who worked less than 60 hours on the case ("transient billers"), using block billing that included vague descriptions of the tasks performed and non-compensable clerical and administrative tasks, billing in minimum quarter-hour billing increments, and redacting entries.

(5) Some or all of the defendants failed to meet their burden of proof with respect to the following:

(a) *Rates and Hours*: The defendants generally, and ICM specifically, haven't shown that the rates and hours billed by their lawyers were reasonable or necessary. (*See* Exs. A–E [Doc. Nos. 1863-2 through 1863-6])

(b) *Expenses*: Other than the Stoel Rives, Patterson, and Stinson firms, defendants failed to provide any "back up" documentation (*e.g.*, receipts) to support their requests for expenses, provided inadequate

13

and vague descriptions of those expenses, and/or improperly billed for administrative or clerical work and overhead expenses generally associated with maintaining, staffing, and equipping a law firms, so expenses should be excluded for those defendants. (*See* Ex. A ("Costs Deduction[s]"/" Deduction[s] of Other Costs") [Doc. No. 1863-2]).

(c) *Expert Fees and Prejudgment Interest*: The defendants haven't shown that CleanTech litigated in "bad faith" or engaged in fraud, and didn't state the rate or amount of prejudgment interest they seek, so their requests for expert fees and prejudgment interest should be denied. (*See* Ex. A ("Deduction[s] for Expert Fees") [Doc. No. 1863-2]).

(d)  *Overstaffing.* "[T]he case could have been better managed and staffed."

(e) *Before Inventor's Deposition and After Summary Judgment.* "There was no reasonable possibility of inequitable conduct until . . . September 21, 2011" (when the inventor was deposed and the parties learned that statement in his original declaration to the PTO regarding the "delivery date" were "incorrect"), and no need to puruse a "totally redundant" inequitable conduct defense that "offered [defendants] no relief beyond what they had aleady obtained", after Judge McKinney granted summary judgment for the defendants on October 23, 2014, so

fees should be awarded, if at all, only for services proved to the defendants between September 21, 2011 and October 23, 2014. [Doc. No. 1863-1].

CleanTech and Mr. McMahon ask the court to apply these reductions to the defendants' fee requests: (1) a rate reduction based on Mr. McMahon's assessment of what constitutes a "reasonable rate"; (2) a 100 percent reduction for amounts billed by "transient billers"; (3) a 25 percent across-the-board reduction for using block billing and/or quarter hour billing increments; (4) a 30 percent across-the-board reduction based on Mr. McMahon's assessment of the factors set forth in Rule 1.5 of the Indiana Rules of Professional Conduct; (5) a 100 percent reduction for undocumented expenses; and (6) a 100 percent reduction for expert fees and prejudgment interest. *See* [Doc. Nos. 1863 and 1863-1 to 1863-6].

The defendants moved to strike Mr. McMahon's affidavit, contending that it's unnecessary, unreliable, and inadmissible under Federal Rules of Evidence 702 and 703 and Daubert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). They contend that Mr. McMahon doesn't have the background and experience needed to qualify as an expert in the area of complex patent litigation, so his opinions on the reasonableness and necessity of the rates, hours, and expenses incurred in this case and the defendants' litigation strategy and case management practices, won't be helpful to the court; his opinions aren't based on a reliable methodology

15

and lack foundation; and his declaration contains inadmissible legal opinions. *See* Jimenez v. City of Chi., 732 F.3d 710, 721 (7th Cir. 2013) ("As a general rule . . . an expert may not offer legal opinions."). CleanTech responds that Mr. McMahon is offered as an expert on billing and case management practices and attorneys' fees issues, not patent litigation, is qualified to render opinions on those subjects, and has provided a sufficient basis for his opinions.

## III.   ANALYSIS

### A. THE MOTION TO STRIKE

Federal Rule of Evidence 702 and the Supreme Court's opinion in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), govern the admissibility of expert testimony. Krik v. Exxon Mobil Corp., 870 F.3d 669, 673 (7th Cir. 2017). "The proponent of the expert bears the burden of demonstrating that the expert's testimony would satisfy the Daubert standard." Lewis v. CITGO Petroleum Corp., 561 F.3d 698, 705 (7th Cir. 2009) (citing Fed. R. Evid. 702, Advisory Committee Notes to the 2000 amendments).

Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience training, or education may testify in the form of an opinion or otherwise if:

16

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods

to the facts of the case.

Fed. R. Evid. 702. A court should consider a proposed expert's full range of practical experience, as well as academic or technical training, when determining whether that expert is qualified to render an opinion in a given area. Smith v. Ford Motor Co., 215 F.3d 713, 718 (7th Cir. 2000).

The court acts as a gatekeeper in screening the admissibility of expert testimony by determining whether the proffered testimony is reliable and relevant. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147 (1999). The court "must make a preliminary assessment that the testimony's underlying reasoning or methodology is scientifically valid and properly applied to the facts at issue." Krik v. Exxon Mobil Corp., 870 F.3d at 673. The standard in Rule 702 applies to all expert testimony or evidence, whether it relates to areas of traditional scientific competence, engineering principles, or other technical or specialized expertise. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. at 147.

The Supreme Court "has given courts the following guidance to determine the reliability of a qualified expert's testimony under Daubert, stating that

17

they are to consider, among other things: '(1) whether the proffered theory can be and has been tested; (2) whether the theory has been subjected to peer review; (3) whether the theory has been evaluated in light of potential rates of error; and (4) whether the theory has been accepted in the relevant scientific community.'" Krik v. Exxon Mobil Corp., 870 F.3d at 674 (quoting Baugh v. Cuprum S.A. de C.V., 845 F.3d 838, 844 (7th Cir. 2017)); Bielskis v. Louisville Ladder, Inc., 663 F.3d 887, 894 (7th Cir. 2011). But the reliability inquiry is a flexible one and "the factors identified in [Daubert] may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Kumho Tire Co. v. Carmichael, 526 U.S. at 150. The court's inquiry doesn't focus on "the ultimate correctness of the expert's conclusions," but rather on "the soundness and care with which the expert arrived at h[is] opinion." Schultz v. Akzo Nobel Paints, LLC, 721 F.3d 426, 431 (7th Cir. 2013) (citing Daubert, 509 U.S. at 595).

Mr. McMahon's testimony must be "based on sufficient facts or data," Stuhlmacher v. Home Depot U.S.A., Inc., 774 F.3d 405, 509 (7th Cir. 2014), to be admissible. "Rule 702's reliability elements require the court to determine only that the expert is providing testimony that is based on a correct application of a reliable methodology and that the expert considered sufficient data to employ

the methodology." <u>Stollings v. Ryobi Techs., Inc.</u>, 725 F.3d 753, 766 (7th Cir. 2013).

Mr. McMahon is licensed to practice in California, New York, and Indiana, and has more than 32 years of litigation and trial experience in the areas of admiralty and maritime law, construction litigation, personal injury, environmental law, and insurance law. He has been retained as an attorney, consultant, and expert regarding the rules of ethics and the necessity and reasonableness of attorneys' fee in numerous cases, has been involved in at least one MDL case, and has published several articles on the internet and has lectured on the subject of insurance law, litigation management, and auditing billing practices. His methodology in evaluating the defendants' fee requests included:

- · reviewing law firm websites, LinkedIn profiles, and State Bar records to determine the qualifications of the attorneys who billed for their services;

- · conducting a rate survey and reviewing the rates published in the Altman & Weil's Surveys of Law Firm Economics, TyMetrix Real Rate Reports, and AIPLA for attorneys with comparable positions, years of experience, and or area of expertise to evaluate the reasonableness of the rates billed by defense counsel;

· examining the bills to ascertain rates, locate abnormalities, and determine whether any of the entries appear to violate applicable billing practices (e.g. billing for prohibited tasks and activities or for vague, nonspecific activities);

· reviewing the fees in light of the factors identified in Indiana Professional Conduct Rule 1.5;

· reviewing orders issued in this case, the docket sheet, and other documents; and

· making adjustments to the rates and hours billed based on the foregoing and calculating the lodestar.

Expert testimony about the reasonableness of an attorney fee request is generally admissible, but not conclusive, even though the court is itself an expert in the area. Mr. McMahon has plenty of qualifications to give an opinion on that topic in most cases. But he isn't a patent attorney and doesn't have the special experience or knowledge about complex patent litigation needed to give reliable opinions about patent litigation. CleanTech says that Mr. McMahon isn't offered for that purpose. Accepting that as true, the court finds that Mr. McMahon lacks the relevant knowledge and expertise necessary to render opinions about the defense counsel's strategies, the need for the inequitable conduct trial, the number of

attorneys, paralegals, support staff, and hours required to litigate this case and the related cases, and what fees are allowed in exceptional patent cases.

An who expert relies on experience as the basis for his opinions must explain "how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 (Advisory Committee Notes to the 2000 amendments). Mr. McMahon hasn't met that burden.

Mr. McMahon's opinions about what the law is, or should be, aren't helpful in understanding the evidence or determining the issues before the court. The court is well aware of the legal principles that govern this case.

Mr. McMahon seems well qualified to give an opinion about generally accepted billing practices "utilized by corporations, insurance companies and sophisticated consumers" and the reasonableness of attorneys' fees that aren't necessarily dependent on the nature of the litigation, but he hasn't identified the source of the corporate "standard billing guidelines" to which he refers or shown that the same guidelines or practices apply in complex patent cases.

The absence of complex patent cases from Mr. McMahon's training, education, and experience opinions makes his opinions on what a "reasonable rate" is in this case neither reliable nor helpful to the trier of fact. Rule 702 and Daubert preclude expert opinion testimony in situation where the opinion "is connected to existing

21

data only by the *ipse dixit* of the expert." <u>Gen. Elec. Co. v. Joiner</u>, 522 136, 146 (1997).

Accordingly, the court grants the joint motion to strike [Doc. No. 1891].

## B. RATES

Clean Tech contends that the court should apply prevailing Indiana rates in determining what a reasonable rate would be because it's where the MDL court is located. But the location of the MDL was "fortuitous." <u>Eli Lilly & Co. V. Zenith Goldline Pharms., Inc.</u>, 264 F. Supp. 2d at 764. The Judicial Panel on Multidistrict Litigation centralized cases that had been filed in multiple jurisdictions, including Kansas, New York, Indiana, Illinois, Connecticut, Minnesota, Iowa and Idaho. Neither the parties' conduct nor the whereabouts of the parties and their attorneys were completely responsible for the cases' association with Indiana.[5]

Given the highly specialized nature of the litigation and the multiple forums involved, the defendants retention of experienced counsel from other states and at higher rates was both reasonable and appropriate. *See* <u>Jeffboat, L.L.C. v. Dir., OWCP</u>, 553 F.3d 487 (7th Cir. 2009) (holding that the "community" whose prevailing

---

[5] The prevailing rates charged by Indiana attorneys is relevant, if at all, only in determining whether the rates charged by Woodard Emhardt, the one Indianapolis-based firm involved in this litigation, were reasonable.

hourly rate must be used can be read as referring to a "community of practitioners," rather than a local market area, particularly when the subject matter of the litigation is highly specialized and the market for legal services within that subject matter is a national market); Eli Lilly & Co. v. Zenith Goldline Pharms., Inc., 264 F. Supp. 2d 753, 764 (S.D. Ind. 2003) ("[S]ome distinctly 'national' litigation, such as multi-district litigation under 28 U.S.C. § 1407, may justify the use of essentially 'national' rates because the location of the forum court is fortuitous."); Alba Conte, 1 Attorney Fee Awards § 4:13 (3d ed. 2010) (courts have recognized that a local forum rate is an inappropriate and illogical standard for antitrust and securities plaintiffs' lawyers, in contrast to their customary billing rates or the growing adoption by courts of national rate standards).

The defendants submitted affidavits identifying the educational background, experience, and rates charged by some, but not all, of the attorneys and support staff that provided services during the course of this litigation, and establishing the market rate for those services. That evidence is only presumptive, Spegon v. Cath. Bishop of Chi., 175 F.3d 544, 555 (7th Cir. 1999); People Who Care v. Rockford Bd. of Educ., 90 F.3d 1307, 1310 (7th Cir. 1996), but GS Clean Tech hasn't presented any reliable evidence to rebut that presumption. It simply, and incorrectly, asserts that Indiana rates set the standard. They do not. Nothing requires a lawyer hired to appear in a case to reduce her regular hourly rate

23

to match the rates common to the community in which the case pends; there would be even less reason to require her to adjust it again when the MDL Panel centralizes the case in still another legal billing community.

The court overrules CleanTech's objections to the rates billed by defense counsel.


C.   HOURS

A fee request should reflect the hours reasonably required "to see the case through trial, to appeal, and for the collection of fees," with recovery for hours that are "excessive, redundant, or otherwise unnecessary" being excluded. <u>Johnson v. GDF, Inc.</u>, 668 F.3d 927, 931, 933 (7th Cir. 2012). When a fee petition is vague or inadequately documented, the court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage. <u>Harper v. City of Chi. Heights</u>, 223 F.3d 593, 605 (7th Cir. 2000).

CleanTech raises several objections to the number of hours defense counsel spent on this litigation, but seeks a reduction for only three categories: the defendants' inclusion of time expended by "transient billers"; their use of block billing and/or quarter hour billing increments; and what Mr. McMahon referred

to as a "Rule 1.5 Deduction," which was based on his assessment of the factors identified in Rule 1.5 of the Indiana Rules of Professional Conduct.

### 1.   *"Transient Billers"*

CleanTech defines a "transient biller" as any individual who billed less than 60 hours over the course of the litigation, and contends that their sporadic participation, the nature of some of the work performed, and/or the absence of information regarding their education, experience, or position indicates that the hours expended by these individuals were unnecessary and/or unreasonable. It asks the court to reduce the defendants' fee request by the amounts billed for their services.

CleanTech provided a list of the "transient billers," their positions, and a summary of the rates, and total number of hours and amounts billed for each over the course of the litigation (Exhibit C to Mr. McMahon's affidavit [Doc. No. 1863-4]), but it didn't identify the dates the services were provided or the tasks that were performed, and the court won't scour the record in search of the missing information. The court can't determine whether CleanTech's objections have any merit without those details, and so overrules those objections.

### 2.   *Block Billing/Quarter-Hour Billing Increments*

Most of CleanTech's objections to the hours billed fall within its proposed deductions for block billing. It says that all of the defendants used block billing that contained vague entries making it difficult to determine the reasonableness of the hours expended, and proposes a 25 percent across-the-board reduction of the defendants' fee request. But the "essential goal in shifting fees . . . is to do rough justice, not achieve auditing perfection," Fox v. Vice, 563 U.S.826, 838 (2011), and the court isn't required to "undertake a line-by-line inquiry of a voluminous fee petition." Vega v. Chi. Park Dist., 12 F.4th 696, 705 (7th Cir. 2021).

Courts discourage the use of block billing because of the challenges it creates in trying to decide what time is compensable and what is not, but the law doesn't prohibit block billing. *See* Farfaras v. Citizens Bank & Tr. of Chi., 433 F.3d 558, 569 (7th Cir. 2006) ("Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice."). CleanTech cited a few examples of entries they found objectionable [Doc. No. 1863-2 at pp. 31–46], and ask the court to assume that all block entries are deficient and reduce all of the defendants' fee requests by 25 percent. But the descriptions of the tasks performed in the examples cited were detailed enough to ascertain whether they were related to this litigation and were reasonable and necessary. The defendants provided affidavits attesting that they were reasonable and

necessary, and CleanTech hasn't shown that the time expended for the tasks described was excessive or unreasonable apart from the way they were billed, given the nature of the litigation and the issues presented, or that there was any unnecessary duplication of effort. Accordingly, the court overrules CleanTech's block billing objection.

CleanTech also objects to the apparent use of quarter-hour billing increments by several of the defendants' law firms (Dicke, Fleeson, Wood, Brown, Best, Stinson and Patterson), but its objection is speculative. CleanTech hasn't shown that any of defendants' attorneys didn't actually bill clients by the quarter hour or that the practice is prohibited, "unreasonable" and/or "archaic" in complex patent litigation (as Mr. McMahon opined). The court overrules CleanTech's billing increment objection.

All but one of the defendants' law firms provided unredacted invoices to the court under seal. Michael Best & Friedrich was the lone exception. Michael Best & Friedrich heavily redacted all of its invoices, contending that they included attorney-client privilege, and didn't file unredacted copies under seal. CleanTech objects, contending that the redactions made it impossible to determine whether the time expended and amounts billed for the redacted entries were necessary or reasonable. The court agrees.

27

A court isn't required to "'undertake a line-by-line inquiry' of a voluminous fee petition," and can take a 'lump-sum approach as a practical means of trimming fat from a fee application.'" <u>Vega v. Chi. Park Dist.</u>, 12 F.4th at 705 (quoting <u>Tomazzoli v. Sheedy</u>, 804 F.2d 93, 98 (7th Cir. 1986); <u>Nichols v. Dep't of Transp.</u>, 4 F.4th 437, 444 (7th Cir. 2021)). While it's not altogether clear, it appears that CleanTech included its objection to the redactions in its proposed reduction for block billing. A 25 percent reduction to the fees requested by Bushmills Ethanol, Chippewa Valley Ethanol, Heartland Corn Products, and United Wisconsin Grain Producers for services provided by Michael Best & Friedrich is both reasonable and appropriate under the circumstances. *See* <u>Harper v. City of Chi. Heights</u>, 223 F.3d 593, 605 (7th Cir.2000) ("[W]hen a fee petition is vague or inadequately documented, a district court may either strike the problematic entries or (in recognition of the impracticalities of requiring courts to do an item-by-item accounting) reduce the proposed fee by a reasonable percentage."). *See also* <u>Avgoustis v. Shinseki</u>, 639 F.3d 1340, 1344 (Fed. Cir. 2011) ("[N]o court of appeals has held that disclosure of the general subject matter of a billing statement under fee-shifting statutes violates attorney-client privilege.").

3.   *Indiana Rule of Professional Conduct 1.5*

The attorneys involved in this case were governed by the rules of this court and by the rules of professional conduct in the states in which they admitted to practice law. Except with respect to the attorneys admitted to practice in Indiana — as to whom CleanTech makes no individual arguments — the factors set forth in Indiana Professional Conduct Rule 1.5 aren't relevant to the determination of whether the hours billed were reasonable or necessary. The court overrules CleanTech's Rule 1.5 objection.

### 4. *Burden of Proof Objections*

#### a. *Rates and Hours*

CleanTech contends that Dicke Billig and Fleeson Gooing (attorneys for ICM) didn't provide their billing rates or the time actually expended in their invoices, so ICM's fees should be reduced by $2,966,039.61 for services provided by Dicke Billig and by $22,695.50 for services provided by Fleeson Gooing. (*See* Exhibit A to Mr. McMahon's affidavit [Doc. No. 1863-2]). CleanTech is mistaken. The affidavit submitted by attorney John Weyrauch, a partner at Dicke Billig, provided a summary of the total hours and amounts billed by each of the individuals who worked on the case for Dicke Billig and their average hourly rates, and the hours, amounts, and average hourly rates billed by Fleeson Gooing. [Doc. No. 1760-2 at

29

pp. 2–3]. As was already explained, CleanTech hasn't shown that those rates and hours were excessive or unreasonable.

### b.  Expenses

With the exception of the Stoel Rives (Al-Corn Fuel), Patterson (GEA), and Stinson (Blue Flint Ethanol) firms, Clean Tech asserts that the defendants' attorneys failed to provide any "back up" documentation (*e.g.*, receipts) to support their requests for expenses, provided inadequate and vague descriptions of those expenses, and/or improperly billed for administrative or clerical work and overhead expenses generally associated with maintaining, staffing, and equipping a law firms, and asks the court to exclude those undocumented expenses in their entirety. Those objections are well-taken and the record supports them.

Most of the defendants provided no details about the expenses they seek, didn't explain why they were necessary or reasonable, and included expenses that generally would have been considered office overhead. The same can't be said for Lincolnway Energy, which submitted a detailed summary of the travel expenses it incurred (*See* Exhibit C to Suzanne Koch Affidavit [Doc. No. 729-3 in Cause No. 1:10-CV-8001).

Accordingly, CleanTech's objection to an award of attorney expenses is sustained, except with respect to the expenses requested by Al-Corn Fuel, GEA, Blue Flint Ethanol, and Lincolnway Energy.

### c. Expert Fees and Prejudgment Interest

Unlike other fee-shifting statutes like 42 U.S.C. § 1988(b) and (c), the Patent Act doesn't authorize an award of expert witness fees, which generally fall under 28 U.S.C. § 1920 and are subject to the limitations in 28 U.S.C. § 1821. Amsted Indus., Inc. v. Buckeye Steel Castings Co., 23 F.3d 374, 377 (Fed. Cir. 1994). While the court may exercise its inherent equitable powers to impose sanctions for bad faith and vexatious conduct, it "must use caution" in doing so. Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991); Amsted Indus., Inc. v. Buckeye Steel Castings Co., 23 F.3d at 378. "When statutes or rules provide an adequate sanction for bad faith, a trial court should ordinarily rely on those express authorities for sanctions." Amsted Indus., Inc. v. Buckeye Steel Castings Co., 23 F.3d at 378.

Clean Tech doesn't challenge the reasonableness of the requested expert fees, but contends that the defendants haven't shown that CleanTech litigated in "bad faith" or engaged in fraud, so their requests for expert fees should be denied. The record demonstrates otherwise.

31

In a related case, Judge Pallmeyer found that:

> GS CleanTech made affirmative, false representation to the PTO about
> the date on which its process was patentable and about the date in
> which it had offered the patented invention to a potential customer.
> Both the District Court and the Court of Appeals found that CleanTech's
> agents knew the statements were false when they were made. Plaintiff
> failed to correct the false statements with the PTO, and after
> obtaining the patents at issue, proceeded to sue more than two dozen
> purported infringers, seeking enforcement of patents obtained on the
> strength of representations that CleanTech principles and their lawyer
> knew to be false.

GS Cleantech Corp. v. Adkins Energy, LLC., No. 10C3291 (N.D. Ill. Mar. 30, 2022).
The court agrees with those findings. But for CleanTech's conduct, the defendants
wouldn't have had to hire and pay for experts and shouldn't be required to absorb
the cost of those experts. Accordingly, CleanTech's objection to an award of expert
fees is overruled.

An inequitable conduct finding requires "specific intent" to deceive and
"but-for" materiality, Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1286,
1289 (Fed. Cir. 2011), and Judge McKinney found both in his September 15, 2016
corrected memorandum.

While it is within the court's power to award prejudgment interest in this
case, the attorneys' fees and expert expenses awarded to the defendants
sufficiently serve the purposes of 35 U.S.C. § 285. Accordingly, the court, in

the exercise of its discretion, declines to award prejudgment interest on the attorney fee award.

### III. CONCLUSION

For the foregoing reasons:

(1) The joint motion to strike that was filed in 1:10-ML-2181 [Doc. No. 1891] and in each of the individual member cases [Doc. No. 673 in 1:10cv8000] [Doc. No. 775 in 1:10cv8001] [Doc. No. 748 in 1:10cv8002] [Doc. No. 724 in 1:10cv8003] [Doc. No. 818 in 1:10cv8004] [Doc. No. 717 in 1:10cv8005] [Doc. No. 621 in 1:10cv8006] [Doc. No. 890 in 1:10cv8007] [Doc. No. 742 in 1:10cv8008] [Doc. No. 791 in 1:10cv8009] [Doc. No. 661 in 1:10cv8010] [Doc. No. 662 in 1:10cv8011] [Doc. No.461 in 1:13cv8012] [Doc. No. 472 in 1:13cv8013] [Doc. No. 450 in 1:13cv8014] [Doc. No. 458 in 1:13cv8015] [Doc. No. 448 in 1:13cv8016] [Doc. No. 434 in 1:13cv8018] [Doc. No. 406 in 1:14cv8019] and [Doc. No. 410 in 1:14cv8020] is GRANTED; and

(2) the defendants' motions for attorneys' fees and expenses [Doc. Nos. 1746-1, 1760-1, 1762, 1765-1, 1768-1, 1771-1, 1774-1, 1777-1, 1781-1, 1787, 1789 and 1792] are GRANTED in part, and DENIED in part.

The following charts summarize the amounts awarded to each defendant based

33

on the analysis in this opinion:[6]

| GEA Mechanical Equipment US, Inc. and Ace Ethanol, LLC | Represented by: Patterson Belknapp Webb & Tyler LLP | Fees: $ 3,753,548.32 Expenses:150,561.20 Experts:  160,627.06  Total: $ 4,064,736.58 |
| ICM | Represented by: Dicki, Billig & Czaja and others | Fees: $ 3,186,945.21 Experts:  176,034.56  Total: $3,362,979.77 |
| Bushmills Ethanol, Inc. | Represented by Michael Best & Friedrich | Fees: $  475,561.90[7] Experts:   24,553.71  Total: $  500,115.61 |
| Chippewa Valley | Represented by: Michael Best & Friedrich | Fees: $   456,432.32[8] Experts:   24,553.70 |

[6] The charts reflect the net amount of fees requested by each defendant (actual amount minus any payment received from the Cantor Colburn settlement). The settlement amounts are confidential, and will remain so.

[7] The amount awarded reflects the 25 percent reduction for the redacted entries ($160,908.33) and a $7,163.12 deduction for "unbilled" and undocumented attorneys' fees for services Michael Best & Friedrich reportedly provided after January 31, 2018.

[8] In its motion, Chippewa requested $675,157.92 in attorneys' fees and $43,510.52 in expenses and expert fees, for a total of $718,668.44 [Doc. No. 1781-1], but the computation of attorneys' fees is significantly less in the affidavit submitted in support of its motion. Attorney J. Donald Best attests in his affidavit that Chippewa paid his firm $608,576.42 in attorneys' fees (after subtracting the Cantor Colburn settlement), and that it incurred an additional $7,163.12 in "unbilled" fees for services provided since February 1, 2018 [Doc. No. 1781-2]. The invoices submitted in support of Chippawa's fee request ended on January 30, 2018 [Doc. No. 1781-4], and no information has been provided regarding the services provided after that date. Accordingly, the court has reduced the amounts requested to reflect the amount of attorneys' fees billed to and paid by Chippewa through January 30, 2018 ($608,576.42), minus the 25 percent reduction for redacted entries ($152,144.10).

| | | |
|---|---|---|
| Ethanol Company, LLP | | Total: $    480,986.02 |
| Heartland Corn Products | Represented by: Michael Best & Friedrich | Fees: $    487,021.79[9] Experts:    24,553.71 <br><br> Total: $  511,575,50 |
| United Wisconsin Grain Producers, LLC (UWGP) | Represented by: Michael Best & Friedrich | Fees: $    488,929.49[10] Experts:    24,553.71 <br><br> Total: $  513,483.20 |
| Iroquois Bio-Energy | Represented by: Woodard Emhardt | Fees:  $1,375,400.50 Experts:    20,957.10 <br><br> Total: $1,396,357.60 |
| Blue Flint Ethanol | Represented by: Stinson Leonard Street | Fees: $    949,413.57 Expenses:  69,913.06 Experts:    23,137.39 <br><br> Total: $ 1,042,464.02 |
| Al-Corn Clean Fuel | Represented by: | Fees: $    805,803.55 |

[9] In its motion, Heartland requested $698,614.00 in attorneys' fees and $43,718.06 in expenses and expert fees, for a total of $742,332.06 [Doc. No. 1781-1], but the computation of attorneys' fees is significantly less in the affidavit submitted in support of its motion. Attorney Michael Best attests in his affidavit that Heartland paid his firm approximately $639,165.89 in attorneys' fees (after subtracting the Cantor Colburn settlement) and incurred an additional $7,163.12 in "unbilled" fees for services provided after February 1, 2018, for a total of $646,329.01 [Doc. No. 1781-2]. The invoices submitted in support of Heartland's fee request ended on January 30, 2018 [Doc. No. 1781-5], and no information has been provided regarding the services provided after that date. Accordingly, the court has reduced the amounts requested to reflect the amount of attorneys' fees billed to and paid by Heartland through January 30, 2018 ($639,165.89), minus the 25 percent reduction for redacted entries ($152,144.10).

[10] The amount awarded reflects the 25 percent reduction for the redacted entries ($162,976.50).

|  | Stoel Rives | Expenses: 26,137.32<br>Experts: 170,555.94<br><br>Total: $1,002,496.81 |
|---|---|---|
| Lincolnway Energy | Represented by:<br>Nyemaster Goode | Fees: $   938,996.84<br>Exps:        30,802.41<br>Experts:     30,007.65<br><br>Total:       999,806.90 |
| Aemetis and Aemetis Advanced Fuels Keyes | Represented by:<br>Brown Winick | Fees: $   399,941.69<br><br>Total: $   399,941.69 |
| Homeland Energy | Represented by:<br>Brown Winick | Fees: $   246,598.75<br><br>Total: $   246,598.75 |
| Pacific Ethanol, LLC | Represented by:<br>Brown Winick | Fees: $   400,720.66<br><br>Total: $   400,720.66 |
| Pacific Ethanol Stockton | Represented by:<br>Brown Winick | Fees: $   245,983.45<br><br>Total: $   245,983.45 |
| Flottweg Separation Technologies | Represented by:<br>Wood, Herron & Evans | Fees: $     70,052.50<br><br>Total: $     70,052.50 |

(3) The parties are ordered to meet and confer within the next 60 days regarding any additional fees for services rendered on appeal in an attempt to resolve those issues. If they are unable to reach an agreement, the defendants shall have to and including July 1, 2022 to file supplemental motions for appellate fees and supporting documentation, together with a certification that they have

36

complied with the meet-and-confer directive. The district rules shall govern the briefing of any supplemental motion.

SO ORDERED.

ENTERED:   May 3, 2022

/s/  Robert  L.  Miller,  Jr.

Judge, United States District Court

Distribution:  All electronically registered counsel of record